ELMORE, Judge.
 

 *474
 
 William Dan Andrews and Linda Andrews own and operate Drake Landing, LLC (collectively, "intervening-respondents"), a recreational hunting and shooting enterprise operating in Harnett County. William Dan Andrews is also the sole proprietor of Andrews Farms, a bona fide commercial crop farm. Drake Landing operates a controlled hunting
 
 *475
 
 preserve and a variety of other commercial shooting activities on several acres of property it leases from Andrews Farms. Drake Landing has never obtained conditional-use permits to operate its hunting preserve or the other shooting activities on the basis that these activities constituted "agritourism" and were thus exempt from countywide zoning. Petitioner Kent Jeffries and intervening-petitioners Frances L. Hare, Bobbie Lewis Jeffries, and Thomas Glenn Finch (collectively, "petitioners") own residential property adjacent to or near Drake
 
 *39
 
 Landing. This case arose from Jeffries' request that the local zoning authority determine whether thirteen different shooting activities offered at Drake Landing constituted agritourism and were thus exempt from countywide zoning, including a conditional-use permitting requirement. After several hearings and hearings on remand before the Harnett County Board of Adjustment ("Board"), the superior court entered multiple orders on the matter, three of which are on appeal.
 

 First, intervening-respondents appeal from a 2012 superior court order that remanded a 2011 Board decision with instructions to allow petitioners to present evidence to satisfy their burden of establishing that Drake Landing's shooting activities were unrelated to Andrews Farms' farming operations and were thus not shielded from zoning regulation under the statutory farm exemption. On appeal, intervening-respondents assert the superior court misinterpreted the zoning ordinance and our General Statutes by concluding that a nexus must exist between the shooting activities and the farming operations, because the shooting activities constitute agritourism and no such nexus is required for agritourism activities to be shielded by the farm exemption from countywide zoning.
 

 Second, intervening-respondents appeal from a 2014 superior court order that reversed in part a 2013 Board decision, in which the court concluded under its
 
 de novo
 
 interpretation of the statutory farm exemption that shooting activities involving continental shooting towers, 3D archery courses and ranges, sporting clays, skeet and trap ranges, rifle ranges, and pistol pits were not as a matter of law activities intended by the legislature to be shielded from zoning regulation, even when performed on bona fide farm property, and even when done in preparation for the rural activity of hunting. The 2014 order also remanded the case to the Board with instructions for it to issue adequate findings and conclusions to support its determination that the remaining challenged activity-Drake Landing's operation of its controlled hunting preserve for domestically raised game birds-constituted a zoning-exempt agritourism activity. On appeal, intervening-respondents assert
 
 *476
 
 the superior court misinterpreted our General Statutes by concluding these other shooting activities were not "agriculture" in the form of "agritourism" but, instead, were "nonfarm purposes" as a matter of law, and were thus subject to zoning regulation.
 

 Third, petitioners appeal from a 2017 superior court order that affirmed a 2016 Board decision entered on remand from the 2014 order. In its 2016 decision, the Board determined that Drake Landing's operation of its hunting preserve was shielded from zoning under the statutory farm exemption. In its 2017 order, the superior court acknowledged that intervening-respondents filed the only petition for
 
 certiorari
 
 review of the 2016 Board decision, and that intervening-respondents conceded they raised no issue with that decision. The order also indicated the superior court judge refused to consider petitioners' challenges to the Board's 2016 decision because they failed to timely perfect an appeal from, or to raise any written objections to, the Board's decision as required under N.C. Gen. Stat. § 160A-393. The superior court thus affirmed the 2016 Board decision. On appeal, petitioners assert the superior court misinterpreted our General Statutes by not concluding that operating a controlled hunting preserve is excluded from the definition of "agritourism" because it amounts to a "nonfarm purpose" as a matter of law and is thus subject to countywide zoning. Petitioners contend, alternatively, that even if operating a controlled hunting preserve is not precluded as a matter of law from the definition of "agritourism," the Board's determination that Drake Landing's particular controlled hunting preserve operation is zoning-exempt was not supported by substantial, competent evidence in the whole record and was thus arbitrary and capricious. Petitioners also contend the superior court erred by failing to adequately review the merits of the Board's 2016 decision, since it refused to address their challenges to that decision.
 

 After careful review, we affirm the 2014 and 2017 orders. We dismiss intervening-respondents' challenges to the 2012 order because they failed to include in the appellate
 
 *40
 
 record the Harnett County Unified Development Ordinance (UDO), upon which they primarily rely to challenge that order, and because our dispositions of petitioners' appeal from the 2017 order and of intervening-respondents' appeal from the 2014 order renders moot any remaining challenges to the 2012 order.
 

 I. Background
 

 William Dan Andrews is the sole proprietor of Andrews Farms, an undisputed bona fide farm. Andrews Farms owns over 2,000 acres of property and its agricultural operation currently consists of harvesting
 
 *477
 
 and producing crops, including,
 
 inter alia
 
 , tobacco, pine straw, soybeans, timber, and grain sorghum. Since the 1990s, a tract of around 240 acres of Andrews Farms' property has been licensed as a controlled hunting preserve, and fowl such as pheasants and chukars have been domestically raised on the property for hunting purposes.
 

 Around 2005, William Dan Andrews and his wife, Linda Andrews, established Drake Landing, a recreational hunting and shooting enterprise that operates on leased property from Andrews Farms. Drake Landing began its business by taking over the hunting preserve operation. Over time, however, Drake Landing added clay target throwers and other parts of the range to offer its patrons additional shooting activities beyond that of the early morning duck hunts and the afternoon pheasant, chukar, and quail hunts. According to the Board's unchallenged finding on the matter, Drake Landing uses over 2,000 acres of Andrews Farms' property to operate its hunting preserve but only about 100 to 120 acres to operate the other shooting activities.
 

 In November 2010, petitioner Kent Jeffries, an adjacent property owner and the president of the North Harnett Property Rights Association, Inc. ("Property Rights Assoc."), wrote the Harnett County Planning Department to inquire as to whether the following shooting activities offered at Drake Landing constituted "agritourism" and were thus exempt from countywide zoning: (1) "hunting preserves"; (2) " 'continental tower shoots' for pheasant"; (3) "3-D archery courses and archery shooting ranges"; (4) "sporting clays and sporting clay courses"; (5) "skeet and trap ranges and other shotgun shooting stations"; (6) "pistol shooting pits and pistol shooting ranges"; (7) "rifle shooting ranges"; (8) "concealed carry handgun training"; (9) " 'Three Gun' firearms competitions"; (10) "IDPA (International Defensive Pistol Association) competitions, both sanctioned and non-sanctioned"; (11) "shotgun competitions, both sanctioned and non-sanctioned"; (12) "other forms of firearms competitions"; and (13) "corporate events hosted on an agritourism farm...."
 

 On 18 January 2011, the zoning authority responded by letter in which it concluded (1) hunting preserves constitute agritourism; (2) continental tower shoots and (3) 3D archery courses and ranges, as "activities related to ... methods and weapons customarily used in the act of hunting in North Carolina," constituted agritourism; (4) sporting clays, (5) trap ranges, and (6) shotgun shooting stations constitute agritourism "when used 'in preparation for the hunt' "; (7) pistol pits and (8) rifle ranges, when "used to educate, enhance or assist in marksmanship skills for the purpose of hunting in a traditional manner ... would be considered a related use to the agritourism activity" because those training activities
 
 *478
 
 were "considered 'preparing for the hunt' "; and (9) corporate events involving these agritourism activities were similarly zoning-exempt. However, the zoning authority concluded, "concealed carry handgun courses, firearms competitions such as three gun and IDPA," and "tactical type training [were] not viewed as a form of agritourism."
 

 Jeffries, individually and as president of the Property Rights Assoc., appealed the zoning authority's determinations to the Harnett County Board of Adjustment ("Board"). After a hearing, the Board entered an order on 9 May 2011 upholding the zoning authority's agritourism conclusions as to each activity on the basis that petitioners failed to show reversible error in the zoning authority's decision ("2011 Board Decision").
 

 On 10 October 2011, Jeffries filed a petition in the superior court for
 
 certiorari
 
 review of the 2011 Board Decision. He argued in relevant part that he was prevented at the Board hearing from presenting evidence to
 
 *41
 
 establish that there was no nexus between Drake Landing's shooting activities and Andrews Farms' farming operations. Later, Drake Landing, William Dan Andrews, and Linda Andrews were allowed to intervene in the case. After the
 
 certiorari
 
 review hearing, the superior court entered an order on 24 July 2012 remanding the matter to the Board ("2012 Order"). In its 2012 Order, the superior court concluded that petitioners "were denied the opportunity to demonstrate facts consistent with their appeal to the Board of Adjustment" and thus remanded the 2011 Board Decision and instructed the Board "to determine for each activity from which Petitioners appealed whether Petitioners can demonstrate the requisite lack of connectivity between the shooting activities and farming activities on the premises of Drake Landing" and to allow petitioners "concerning each disputed activity, to offer evidence concerning the scope, size, hours of operation, number of persons involved, traffic, etc. and relation to shooting activities and farming activities as well as enterprise."
 

 After the ordered remand hearing, the Board issued a decision on 11 March 2013, again upholding the zoning authority's agritourism conclusions ("2013 Board Decision"). In its 2013 Board Decision, the Board concluded that (1) "[h]unting preserves are agritourism" and concluded further that, "as used in preparation for the hunt," so were the following activities: (2) "Continental Tower shoots," (3) "3D Archery courses and ranges," (4) "Sporting Clays," (5) "Skeet and Trap shooting and ranges," (6) "Rifle Ranges," and (7) "Pistol Pits." The Board also concluded that (8) "Corporate Events" constituted agritourism "when used with hunting preserves or farming activities."
 

 *479
 
 On 10 April 2013, Jeffries petitioned the superior court for
 
 certiorari
 
 review of the 2013 Board Decision. Later, adjacent residential property owners Bobbie Lewis Jeffries, Lynwood W. Hare, Frances L. Hare, and Thomas Glenn Finch were allowed to intervene in the case. After the
 
 certiorari
 
 review hearing, the superior court reversed in part and remanded in part the 2013 Board Decision by order entered 17 March 2014 ("2014 Order").
 

 In its 2014 Order, the superior court remanded the Board's determination as to the (1) hunting preserve and reversed the Board's conclusions that (2) "continental shooting towers," (3) "3D archery courses and ranges," (4) "sporting clay," (5) "skeet and trap ranges," (6) "rifle ranges," (7) "pistol pits," and (8) corporate events involving these shooting activities were shielded from zoning regulation under the statutory farm exemption. Under a
 
 de novo
 
 review of the farming exemption statutes, the superior court concluded as a matter of law that those shooting activities were neither "agriculture" under
 
 N.C. Gen. Stat. § 106-581.1
 
 nor "bona fide farm purposes" under N.C. Gen. Stat. § 153A-340. Rather, the superior court concluded, those activities were "non-farm purposes" under N.C. Gen. Stat. § 153A-340(b), "even when conducted on property which otherwise qualifies as a bona-fide farm or when conducted in connection with or 'in preparation for' hunting" and were thus subject to zoning. It also concluded, alternatively, that under the whole-record test, the Board's decision was not supported by "substantial competent evidence in the whole record" because "[a]ll of the competence evidence in the record establishes that the activities are in fact non-farm uses which are subject to county zoning." However, the superior court remanded the matter in part with instructions for the Board to issue "findings of fact and conclusions of law on [Drake Landing's] operation of [its] 'hunting preserve.' "
 

 On 4 April 2014, intervening-respondents filed notices of appeal from the 2012 and 2014 Orders. This Court subsequently allowed petitioners' motion to dismiss those appeals on the basis that the orders were interlocutory.
 
 See
 
 Order,
 
 Jeffries v. Hare
 
 , No. 14-1022 (N.C. App. Jan. 30, 2015) (dismissing appeals).
 

 After remand from the 2014 Order, the Board issued a decision on 12 October 2015 in which it concluded that, because Drake Landing possessed a valid controlled hunting preserve license from the North Carolina Wildlife Resources Commission, its property was thus categorically exempt from zoning ("2015 Board Decision").
 

 *42
 
 On 13 November 2015, intervening-respondents, not petitioners, petitioned the superior court for
 
 certiorari
 
 review of the 2015 Board
 
 *480
 
 Decision. In its petition, intervening-respondents conceded they raised no issue with the 2015 Board Decision and requested relief in the form affirming that decision so they could refile their appeals from the 2012 and 2014 Orders. After a hearing, the superior court reversed the 2015 Board Decision by order entered 2 June 2016 ("2016 Order"). In its 2016 Order, the superior court concluded that possessing a controlled hunting preserve license did not categorically exempt Drake Landing's property from countywide zoning regulation, and it again remanded the matter with instructions for the Board to issue findings and conclusions to "address the specific activities, if any, which the Board finds to constitute a 'hunting preserve' and whether, and why, such activities are 'agritourism' within the meaning of the applicable North Carolina General Statutes."
 

 After the ordered remand hearing, the Board issued a decision on 3 August 2016 with detailed findings and conclusions supporting its determination that Drake Landing's particular controlled hunting preserve operation was exempt from zoning ("2016 Board Decision"). In its 2016 Board Decision, the Board concluded in relevant part that
 

 controlled hunting preserves for domestically raised game birds, like those at Drake Landing and Andrews Farms, are exempt from any and all Harnett County zoning ordinances[ ] ... because hunting preserves like those at Drake Landing and Andrews Farms are operated on a bona fide farm, constitute a bona fide farm purpose under both N.C. Gen. Stat. § 153A-340(b)(2) and
 
 N.C. Gen. Stat. § 106-581.1
 
 , and are considered agritourism under N.C. Gen. Stat. § 99E-30.
 

 On 1 September 2016, intervening-respondents, not petitioners, petitioned the superior court for
 
 certiorari
 
 review of the 2016 Board Decision. In its petition, intervening-respondents again conceded they raised no issue with the 2016 Board Decision and requested relief in the form of affirming that decision, and again explained that they "intend[ed] to refile their appeal[s from the 2012 and 2014 Orders], which was previously dismissed by the Court of Appeals as interlocutory, and file[d] this Petition for Writ of Certiorari out of an abundance of caution in order to preserve their right to appeal." Petitioners never filed a petition for
 
 certiorari
 
 review of the 2016 Board Decision, moved to intervene as "petitioners" to intervening-respondents' petition, nor filed any responsive pleading in which they lodged any objections or requested any relief from that decision; rather, the first objection petitioners raised to the 2016 Board Decision occurred at the
 
 certiorari
 
 review hearing initiated
 
 *481
 
 by intervening-respondents' petition. After the hearing, the superior court affirmed the 2016 Board Decision by order entered 10 March 2017 ("2017 Order").
 

 In its 2017 Order, the superior court indicated that it refused to address the merits of any challenge to the 2016 Board Decision raised by petitioners for the first time at the
 
 certiorari
 
 review hearing. The superior court concluded that petitioners failed to timely preserve their objection to that decision because they failed to comply with N.C. Gen. Stat. § 160A-393(c) 's requirement of filing a petition for
 
 certiorari
 
 review, in which petitioners were required to state the grounds upon which they contended the Board erred and to state the relief they sought from the 2016 Board Decision, and because petitioners failed to file any "form of written objection or request from relief" from that decision. The superior court also acknowledged that intervening-respondents stated in their petition they raised no issue with the 2016 Board Decision and sought relief in the form of affirming that decision "solely to preserve their appellate rights with respect to prior rulings of the Superior Court." Accordingly, the superior court concluded that intervening-respondents were entitled as a matter of law to prevail on the issues properly before it and thus affirmed the 2016 Board Decision.
 

 Intervening-respondents appeal the 2012 and 2014 Orders; petitioners appeal the 2017 Order.
 

 II. Review Standards
 

 On
 
 certiorari
 
 review of a county zoning board of adjustment's quasi-judicial decision, "the superior court sits as an appellate
 
 *43
 
 court,"
 
 Bailey & Assocs., Inc. v. Wilmington Bd. of Adjustment
 
 ,
 
 202 N.C. App. 177
 
 , 189,
 
 689 S.E.2d 576
 
 , 585 (2010) (citation and quotation marks omitted), and is tasked with the following:
 

 (1) review the record for errors of law; (2) ensure that procedures specified by law in both statute and ordinance are followed; (3) ensure that appropriate due process rights of the petitioner are protected, including the right to offer evidence, cross-examine witnesses, and inspect documents; (4) ensure that the decision is supported by competent, material, and substantial evidence in the whole record; and (5) ensure that the decision is not arbitrary and capricious.
 

 Cary Creek Ltd. P'ship v. Town of Cary
 
 ,
 
 207 N.C. App. 339
 
 , 341-42,
 
 700 S.E.2d 80
 
 , 82-83 (2010) (citation omitted). The superior court should
 
 *482
 
 apply
 
 de novo
 
 review to a petitioner's allegation of error implicating one of the first three enumerations and whole-record review to the last two.
 
 See, e.g.
 
 ,
 
 Four Seasons Mgmt. Servs., Inc. v. Town of Wrightsville Beach
 
 ,
 
 205 N.C. App. 65
 
 , 75,
 
 695 S.E.2d 456
 
 , 462 (2010) ("If a petitioner contends the Board's decision was based on an error of law, '
 
 de novo
 
 ' review is proper. However, if the petitioner contends the Board's decision was not supported by the evidence or was arbitrary and capricious, then the reviewing court must apply the 'whole record' test." (citation and quotation marks omitted) ).
 

 "We review a superior court's
 
 certiorari
 
 review of a [county] zoning board's quasi-judicial decision to determine whether the superior court: (1) exercised the appropriate scope of review and, if appropriate, (2) decide whether the court did so properly."
 
 NCJS, LLC v. City of Charlotte
 
 , --- N.C. App. ----, ----,
 
 803 S.E.2d 684
 
 , 688 (2017) (citation and internal quotation marks omitted).
 

 III. Petitioners' Appeal
 

 On appeal from the 2017 Order, petitioners contend the superior court erred by affirming the 2016 Board Decision because (1) as a matter of law, operating a controlled hunting preserve does not constitute the "bona fide farm purpose[ ]" of "agritourism" under the statutory farm exemption but instead constitutes a "nonfarm purpose" under N.C. Gen. Stat. § 153A-340(b)(1), that is thus subject to countywide zoning regulation; or, alternatively, (2) even if a hunting preserve is not excluded as a matter of law from the definition of agritourism, the Board's decision was not supported by sufficient evidence in the whole record because petitioners presented substantial, competent evidence that Drake Landing's hunting preserve is wholly unrelated to Andrews Farms' farming operations, and that the scale of Drake Landing's hunting preserve operation is such that it amounts to a "nonfarm purpose" subject to zoning regulation. Petitioners also argue (3) the superior court failed to adequately review the 2016 Board Decision because its 2017 Order affirming that decision was based not on the merits of the 2016 Board Decision but merely on procedural grounds.
 

 As a threshold matter, intervening-respondents contend that petitioners failed to preserve any objection to the 2016 Board Decision because they never filed a petition for
 
 certiorari
 
 review of that decision, nor filed any responsive pleading in which they raised an issue with, or requested any relief from, the 2016 Board Decision. Thus, intervening-respondents argue, the superior court properly affirmed the 2016 Board Decision based upon the issues properly before it. We agree.
 

 *483
 
 In its 2017 Order, the superior court made the following unchallenged, and thus binding, factual findings:
 

 1. On September 1, 2016, Intervening Respondents ... filed a "Petition for Writ of Certiorari" from the [2016 Board Decision] finding the "hunting preserve" ... to be agritourism and exempt from county zoning.
 

 2. In their petition, Intervening Respondents expressly stated that their petition was filed solely to preserve their appellate rights with respect to prior rulings of the Superior Court. Intervening Respondents further stated that they "did not appeal the most recent determination of the Board of Adjustment" regarding their hunting preserve.
 

 *44
 
 3. Intervening Respondents' Petition did not in any way object to, or allege any error in, the [2016 Board Decision].
 

 4. Neither Petitioner Kent Jeffries nor any Intervening Petitioners filed a petition for writ of certiorari from the [2016 Board Decision]. Jeffries and Intervening Petitioners have not filed any written objection or request for relief from the [2016 Board Decision], nor have they asserted in any writing filed with this court, by pleading or Correspondence, the grounds upon which they contend any error was made nor requested any relief from the most recent decision of the Board of Adjustment.
 

 5. Mr. Jeffries and Intervening Petitioners did not file any Answer in response to the petition of [intervening-respondents] and did not request any alternative relief.
 

 6. Intervening Respondents objected at the February 21, 2017 hearing to the court considering any contentions of error now made by Kent Jeffries or Intervening Petitioners because such parties did not file any form of written objection.
 

 7. North Carolina General Statute 160A-393(c), made applicable to county boards of adjustment by N.C. General Statute 153A-349, provides:
 

 An appeal in the nature of certiorari
 
 shall
 
 be initiated by filing with the superior court a petition for writ of certiorari.
 

 *484
 
 The petition
 
 shall
 
 :
 

 (2) Set forth the grounds upon which the petitioner contends that an error was made....
 

 (4) Set forth the relief the petitioner seeks.
 

 (emphasis added)
 

 8. Mr. Kent Jeffries and Intervening Petitioners have not complied with the requirements of N.C. General Statute 160A-393 for timely preserving their objection to the [2016 Board Decision] and for seeking relief from such order.
 

 9. Drake Landing, LLC, William Dan Andrews and Linda Andrews are entitled, as a matter of law, to prevail on the issues now before the court.
 

 N.C. Gen. Stat. § 153A-393 (2017) governs appeals in the nature of
 
 certiorari
 
 . Upon issuing a writ for
 
 certiorari
 
 review of a board decision, the superior court "shall hear and decide all issues raised by the
 
 petition
 
 [,]"
 

 id.
 

 § 160A-393(j) (emphasis added), and "shall ensure that the rights of
 
 petitioners
 
 have not been prejudiced[,]"
 

 id.
 

 § 160A-393(k)(1) (emphasis added). Following its review, the superior court "may affirm the decision, reverse the decision and remand the case with appropriate instructions, or remand the case for further proceedings."
 

 Id.
 

 § 160A-393(
 
 l
 
 ).
 

 Here, intervening-respondents filed the only petition for
 
 certiorari
 
 review of the 2016 Board Decision in which they contended the Board made no error in its decision and sought relief in the form of affirming that decision. Petitioners, contrarily, never filed a petition for
 
 certiorari
 
 review of that decision and, consequently, never set forth any grounds upon which they contended the Board erred, nor requested any relief from the 2016 Board Decision; petitioners never moved to intervene as a "petitioner" for the
 
 certiorari
 
 review hearing on the 2016 Board Decision,
 
 see
 
 N.C. Gen. Stat. § 160A-393(h) ; nor did petitioners file any responsive pleading in which they raised any objection to that decision,
 
 see
 

 id.
 

 § 160A-393(g) (permitting but not requiring a party to file a responsive pleading). Indeed, although the 2016 Board Decision was entered and mailed to petitioners on 3 August 2016, petitioners lodged no formal objection to that decision until the 21 February 2017
 
 certiorari
 
 review hearing initiated solely by intervening-respondents' petition.
 

 Accordingly, because the only petition for
 
 certiorari
 
 review of the 2016 Board Decision was filed by intervening-respondents, in which they
 
 *485
 
 conceded they raised no issue with that decision and requested relief in the form of affirming that decision, and because petitioners neither lodged any written objections to the 2016 Board Decision, requested any alternative form of relief, nor moved to intervene as a "petitioner," the superior court properly determined that the 2016 Board Decision did not prejudice the petitioning party's rights, and it thus did not err
 
 *45
 
 by affirming the 2016 Board Decision based upon intervening-respondents' petition.
 

 Further, although petitioners attempted to challenge the 2016 Board Decision for the first time at the
 
 certiorari
 
 review hearing, the superior court properly refused to address the merits of their arguments on procedural grounds.
 

 "[A]n appeal is not a matter of absolute right, but the appellant must comply with the statutes and rules of Court as to the time and manner of taking and perfecting his appeal."
 
 Hirschman v. Chatham Cty.
 
 , --- N.C. App. ----, ----,
 
 792 S.E.2d 211
 
 , 216 (2016) (citations and quotation marks omitted);
 
 see also
 

 id.
 

 at ----,
 
 792 S.E.2d at 213
 
 (holding that the superior court properly dismissed a petition for
 
 certiorari
 
 review of a board decision where the petitioner failed to name the conditional-use permit applicant as a respondent as required under N.C. Gen. Stat. § 160A-393(e) and thus failed to perfect his appeal, reasoning that this noncompliance deprived the superior court of jurisdiction to review the merits of the board decision). Under N.C. Gen. Stat. § 160A-393, to perfect an appeal from a zoning board's decision, a party with standing must file a petition in the superior court for
 
 certiorari
 
 review of that decision, which "shall[ ] ... [s]et forth the grounds upon which the petitioner contends that an error was made" and "[s]et forth the relief the petitioner seeks."
 

 Id.
 

 §§ 160A-393(c)(1), (c)(4). "Our appellate courts have consistently held that the use of the word 'shall' in a statute indicates what actions are required or mandatory."
 
 Hirschman
 
 , --- N.C. App. at ----,
 
 792 S.E.2d at
 
 213 ;
 
 see also
 

 id.
 

 at ----,
 
 792 S.E.2d at 213-16
 
 (holding that a non-conditional-use-applicant seeking
 
 certiorari
 
 review of a board decision never perfected an appeal because he failed to comply with N.C. Gen. Stat. § 160A-393(e) 's requirement that such a petitioner "shall ... name th[e] applicant as a respondent....").
 

 Here, petitioners failed to comply with subsection 160A-393(c)'s petition filing requirements and thus never perfected an appeal from the 2016 Board Decision. Further, petitioners never moved to intervene as a "petitioner" to intervening-respondents' petition for
 
 certiorari
 
 review of the 2016 Board Decision, nor did they file any responsive pleading, raise any written objection, or request any relief from that decision.
 
 Cf.
 

 Durham Cty. v. Addison
 
 ,
 
 262 N.C. 280
 
 , 283,
 
 136 S.E.2d 600
 
 , 603 (1964)
 

 *486
 
 ("The decision of the Board of Adjustment is not subject to collateral attack." (citation omitted) );
 
 Wil-Hol Corp. v. Marshall
 
 ,
 
 71 N.C. App. 611
 
 , 614,
 
 322 S.E.2d 655
 
 , 657 (1984) ("[T]he statutory procedure for challenging the validity of a zoning ordinance is to petition the Superior Court for certiorari to review the final decision of the Board of Adjustment. A zoning ordinance may not be collaterally attacked by a party that failed to avail herself of the judicial review that the ordinance and statutes authorize." (internal citation omitted) ). Thus, the superior court properly concluded that petitioners were procedurally barred from challenging the 2016 Board Decision for the first time at the
 
 certiorari
 
 review hearing. Accordingly, we affirm the 2017 Order affirming the 2016 Board Decision based on these procedural grounds and thus do not reach the merits of petitioners' challenges to the 2016 Board Decision.
 

 As a secondary matter, petitioners contend the procedural posture underlying the superior court's
 
 certiorari
 
 merits-review of the 2015 Board Decision is identical to that of its
 
 certiorari
 
 review of the 2016 Board Decision and, thus, the superior court should have similarly reviewed the merits of that later decision. In both instances, petitioners argue, intervening-respondents filed the only
 
 certiorari
 
 petition in which they set forth no allegations of error in the Board's decisions and requested relief in the form of affirming those decisions for the purpose of preserving their right to refile their appeals from the 2012 and 2014 Orders. Although the 2016 Order is not on appeal, we reject petitioners' argument. The postures yielding both
 
 certiorari
 
 review hearings were procedurally different and, before the superior court's
 
 certiorari
 
 review of the 2015 Board Decision, petitioners unequivocally expressed their intent to appeal that decision and lodged specific, written objections to that decision.
 

 The 2014 Order remanded the 2013 Board Decision, which yielded the 2015 Board Decision.
 

 *46
 
 On 19 October 2015, respondent Harnett County wrote a letter to Judge Gilchrist, who issued the 2014 Order, and enclosed a courtesy copy of the 2015 Board Decision. In its letter, Harnett County wrote: "It is the belief of counsel and the parties that procedurally, the appeal of the [2015 Board Decision] would lie in Harnett County Superior Court, but that Your Honor would be under no obligation to judicially review [that decision] unless appeal is affirmatively taken by any of the parties." On 26 October 2015, Jeffries responded by letter to Judge Gilchrist, writing that Hartnett County "is an adverse party in this case and does not speak for the petitioners" and that "[i]t is my position that an appeal is not necessary because this matter has already been appealed." Jeffries opined that this Court, in dismissing intervening-respondents' prior appeals, "labeled [the 2014 Order] as an
 
 *487
 
 'interlocutory order' that 'did not decide all issues before the trial court' " and, thus, "[t]his case is now back in Your Honor's court...." Jeffries then objected in writing to the Board's decision to "adopt[ ] wholesale the County's draft order" and not allow petitioners to discuss or explain their proposed order, and then set forth five separate grounds upon which he challenged the propriety of the 2015 Board Decision. Jeffries also requested that Judge Gilchrist "set dates for the submission of written arguments and for oral argument." Subsequently, on 13 November 2015, intervening-respondents filed their petition for
 
 certiorari
 
 review of the 2015 Board Decision.
 

 As reflected, although the
 
 certiorari
 
 reviews of both the 2015 and 2016 Board Decisions were initiated solely by intervening-respondents' petition, unlike their failures to do so with the 2016 Board Decision, petitioners unambiguously expressed their intent to appeal the 2015 Board Decision and lodged specific, written objections to that decision before the hearing. Accordingly, we reject petitioners' argument.
 

 IV. Intervening-Respondents' Appeals
 

 A. 2014 Order
 

 On appeal from the 2014 Order, intervening-respondents assert the superior court erred by reversing the 2013 Board Decision with respect to its conclusions that Drake Landing's operation of commercial shooting activities involving "continental shooting towers, 3D archery courses and ranges, sporting clay, skeet and trap ranges, rifle ranges and pistol pits" constituted "agritourism" activities shielded by the statutory farm exemption from countywide zoning. Intervening-respondents argue that the superior court (1) misinterpreted our General Statutes by concluding as a matter of law that these shooting activities fall outside the farm exemption and were thus subject to zoning; and (2) erroneously concluded that, in the alternative, the 2013 Board Decision was not supported by substantial competent evidence in the whole record. Because we hold that the superior court properly concluded these shooting activities as a matter of law fall outside the statutory farm exemption, we affirm the 2014 Order on this basis. We thus need not address intervening-respondents' remaining challenge to the superior court's alternative rationale for reversing the 2013 Board Decision.
 

 In its 2014 Order, the superior court concluded in relevant part:
 

 Issues of statutory interpretation are questions of law to be decided by application of a
 
 de novo
 
 standard of review. Applying the
 
 de novo
 
 standard, the court concludes that
 
 *488
 
 the General Assembly did not intend to include continental shooting towers, 3D archery courses and ranges, sporting clay, skeet and trap ranges, rifle ranges and pistol pits within the definition of "agriculture" in
 
 N.C. Gen. Stat. § 106-581.1
 
 or of "bona fide farm purposes" under N.C. Gen. Stat. § 153A-340. These uses are instead non-farm purposes under N.C. Gen. Stat. § 153A-340(b) and are not exempt from county zoning laws, even when conducted on property which otherwise qualifies as a bona-fide farm or when conducted in connection with or 'in preparation for' hunting.
 

 As reflected, the superior court properly identified
 
 de novo
 
 as the applicable review standard to address issues of statutory interpretation. Our review is whether it properly applied that standard by concluding these shooting activities do not as a matter of law constitute activities intended to be shielded
 
 *47
 
 from zoning under the statutory farm exemption.
 

 1. Statutory Farm Exemption from Countywide Zoning
 

 "Statutory interpretation properly begins with an examination of the plain words of the statute."
 
 Lanvale Properties, LLC v. Cty. of Cabarrus
 
 ,
 
 366 N.C. 142
 
 , 154,
 
 731 S.E.2d 800
 
 , 809 (2012) (citation and quotation marks omitted). "[W]hen the language of a statute is clear and unambiguous, there is no room for judicial construction, and the courts must give it its plain and definite meaning."
 
 Id.
 
 at 154,
 
 731 S.E.2d at 809-10
 
 (citation and quotation marks omitted). Only where statutory language is unclear or ambiguous may courts resort to canons of judicial construction to interpret meaning.
 

 Under the statutory farm exemption, "property used for bona fide farm purposes" is exempt from countywide zoning regulation but "the use of farm property for nonfarm purposes" is not.
 
 See
 
 N.C. Gen. Stat. § 153A-340(b)(1) (2013) (providing that countywide zoning "regulations may affect property used for bona fide farm purposes," with the exception of swine farms, but providing that "[t]his subsection does not limit regulation ... with respect to the use of farm property for nonfarm purposes");
 
 [1]
 

 see also
 

 *489
 

 Hampton v. Cumberland Cty.
 
 , --- N.C. App. ----, ----,
 
 808 S.E.2d 763
 
 , 775 (2017) (noting that "non-farm uses, even on bona fide farms, are not exempt from zoning regulation"). "[B]ona fide farm purposes include the production and
 
 activities relating or incidental to the production of
 
 crops, grains, fruits, vegetables, ornamental and flowering plants, dairy, livestock, poultry, and
 
 all other forms of agriculture
 
 , as defined in G.S. 106-581.1." N.C. Gen. Stat. § 153A-340(b)(2) (2013) (emphasis added). "Agriculture" is defined in relevant part as follows:
 

 When performed on the farm, 'agriculture' ... also include[s]
 
 the marketing and selling of agricultural products,
 
 agritourism
 
 , the storage and use of materials for agricultural purposes, packing, treating, processing, sorting, storage, and other activities performed to add value to crops, livestock, and agricultural items produced on the farm, and similar activities incident to the operation of a farm.
 

 Id.
 

 § 106-581.1(6) (2013) (emphasis added).
 

 However, neither Chapter 153A, governing county authority, nor Chapter 106, governing agriculture, defined "agritourism." But Chapter 99E, governing special liability provisions, defined "[a]gritourism activity" in relevant part as
 

 [a]ny activity carried out on a farm or ranch that allows members of the general public, for recreational, entertainment, or educational purposes, to view or enjoy rural activities, including farming, ranching, historic, cultural, harvest-your-own activities, or natural activities and attractions.
 

 Id.
 

 § 99E-30(1) (2013).
 

 2. 2017 Act
 

 While it was unclear when the Board and superior court decided the matter whether the legislature intended to shield from countywide zoning regulation the same "agritourism activities" it intended to shield from liability, after the case reached this Court, our General Assembly enacted "An Act to Amend Certain Laws Governing Agricultural Matters" ("2017 Act").
 
 See
 
 Act of July 12, 2017, ch. 108, 2017 N.C. Sess. Laws ----, ----. Most pertinent here, the 2017 Act amended N.C. Gen. Stat. § 153A-340(b) by adding subdivision (2a), which in relevant parts incorporated N.C. Gen. Stat. § 99E-30(1) 's "agritourism activity" definition into section 153A-340 and described certain types of zoning-exempt
 
 *490
 
 agritourism buildings and structures. Ch. 108, sec. 8.(a), 2017 N.C. Sess. Laws at ---- (clarifying activities incident to the farm and agritourism). As a result, the applicable statutory farm exemption provisions now provide in pertinent part:
 

 *48
 
 For purposes of this section, "agritourism" means any activity carried out on a farm or ranch that allows members of the general public, for recreational, entertainment, or educational purposes, to view or enjoy rural activities, including farming, ranching, historic, cultural, harvest-your-own activities, or natural activities and attractions. A building or structure used for agritourism includes any building or structure used for public or private events, including, but not limited to, weddings, receptions, meetings, demonstrations of farm activities, meals, and other events that are taking place on the farm because of its farm or rural setting.
 

 N.C. Gen. Stat. § 153A-340(b)(2a) (2017). A threshold question is whether N.C. Gen. Stat. § 153A-340(b)(2a) applies in this case to guide our interpretation of whether these shooting activities were intended by the legislature to constitute agritourism activities shielded by the statutory farm exemption.
 

 An amendment that substantially alters the meaning of a law applies only prospectively.
 
 Ray v. N.C. Dep't of Transp.
 
 ,
 
 366 N.C. 1
 
 , 9,
 
 727 S.E.2d 675
 
 , 682 (2012) ("[T]he default rule provides statutes with a prospective effective date[.]" (citation omitted) ). But an amendment that merely clarifies the meaning of a law, rather than alters its substance, "will apply to all claims pending or brought before our State's courts after the amendment's passage."
 

 Id.
 

 We must therefore determine whether the addition of subdivision (2a) clarifies or alters subsection (b).
 
 Id.
 
 at 9,
 
 727 S.E.2d at 681-82
 
 ("It is this Court's job to determine whether an amendment is clarifying or altering." (citation omitted) ).
 

 "To determine whether the amendment clarifies the prior law or alters it requires a careful comparison of the original and amended statutes." If the statute initially "fails expressly to address a particular point" but addresses it after the amendment, "the amendment is more likely to be clarifying than altering."
 

 Id.
 
 at 10,
 
 727 S.E.2d at 682
 
 (quoting
 
 Ferrell v. Dep't of Transp.
 
 ,
 
 334 N.C. 650
 
 , 659,
 
 435 S.E.2d 309
 
 , 315 (1993) ).
 

 *491
 
 In
 
 Ferrell
 
 , our Supreme Court was presented with an issue requiring it to interpret a statute governing the reconveyance of land taken by eminent domain but no longer needed, which was amended while the appeal was pending, and addressed whether that amendment was merely clarifying and thus applicable, or was substantially altering and thus inapplicable.
 
 334 N.C. 650
 
 ,
 
 435 S.E.2d 309
 
 (1993). There, when the Department of Transportation (DOT) offered its initial sell-back price offer to the original property owner, the relevant statute did not specify at what price the DOT was to sell back the property.
 
 Id.
 
 at 657,
 
 435 S.E.2d at 314
 
 . But by the time the case reached our Supreme Court, the legislature had amended that statute by adding language that provided clear guidance on the sell-back price calculation.
 
 Id.
 
 at 658-59,
 
 435 S.E.2d at 315
 
 . Our Supreme Court concluded that the amendment was clarifying, not altering, and thus relied on its calculative guidance in determining the propriety of the DOT's sell-back price offer. The
 
 Ferrell
 
 Court reasoned:
 

 Since here the statute before amendment provided no express guidance as to selling price, the amendment which addresses the selling price is best interpreted as clarifying the statute as it existed before the amendment. It is, therefore, strong evidence of what the legislature intended when it enacted the original statute.
 

 Id.
 
 at 659,
 
 435 S.E.2d at 315-16
 
 (footnote omitted).
 

 Here, when the Board and superior court issued their decisions, N.C. Gen. Stat. § 153A-340(b) exempted from zoning regulation property used for "bona fide farm purposes," which included "all ... forms of agriculture" under
 
 N.C. Gen. Stat. § 106-581.1
 
 , such as "agritourism." But neither statute defined "agritourism." However, after this case reached our Court, the legislature amended N.C. Gen. Stat. § 153A-340(b) by adding subdivision (2a), which incorporated verbatim N.C. Gen. Stat. § 99E-30(1) 's "agritourism activity" definition into the section 153A-340 and provided guidance on what buildings or structures might constitute agritourism buildings or structures, providing "strong evidence" that the General
 
 *49
 
 Assembly intended to shield from zoning regulation the same agritourism activities it intended to shield from liability, and that the amendment intended to clarify what sorts of activities it contemplated might constitute agritourism.
 

 Thus, we conclude that the addition of N.C. Gen. Stat. § 153A-340(b)(2a) served merely to clarify, rather than alter, the substance of the statutory farm exemption by providing further guidance on what constitutes
 
 *492
 
 zoning-exempt agritourism activities.
 
 See
 
 ch. 108, sec. 8.(a), 2017 N.C. Sess. Laws at ---- (labeling the heading of section 8(a), which added N.C. Gen. Stat. § 153A-340(b)(2), as "Clarify activities incident to the farm and agritourism" (original in all caps) );
 
 see also
 

 Taylor v. Crisp
 
 ,
 
 286 N.C. 488
 
 , 497,
 
 212 S.E.2d 381
 
 , 387 (1975) (" 'Whereas it is logical to conclude that an amendment to an unambiguous statute indicates the intent to change the law, no such inference arises when the legislature amends an ambiguous provision.' In such case, the purpose of the variation may be 'to clarify that which was previously doubtful.' " (citation omitted) ). We therefore rely on the clarifying language of subdivision (2a) to guide our interpretation of whether the legislature intended these shooting activities to constitute "agritourism" activities shielded from zoning regulation under the statutory farm exemption.
 

 3. N.C. Gen. Stat. § 153A-340(b)(2a)
 

 It is undisputed that Drake Landing operates its business on property it leases from Andrews Farms, a bona fide farm. At issue is whether using bona fide farm property to operate commercial shooting activities involving continental shooting towers, 3D archery courses and ranges, sporting clay, skeet and trap ranges, rifle ranges and pistol pits constitutes agritourism. As stated above, N.C. Gen. Stat. § 153A-340(b)(2a) defines "agritourism" in pertinent part as follows:
 

 "[A]gritourism" means any activity carried out on a farm or ranch that allows members of the general public, for recreational, entertainment, or educational purposes, to view or enjoy
 
 rural activities
 
 , including farming, ranching, historic, cultural, harvest-your-own activities, or natural activities and attractions.
 

 Id.
 

 § 153A-340(b)(2a) (emphasis added).
 

 Based on its plain language, it is unclear whether our legislature intended for these shooting activities, even when relating to or incidental to a rural activity such as hunting, to constitute zoning-exempt agritourism activities. Indeed, in the 2017 Act, the General Assembly requested a Legislative Research Commission study pertaining to what constitutes agritourism.
 
 See
 
 ch. 108, sec. 1.(a), 2017 N.C. Sess. Laws at ---- (ordering the Agriculture and Forestry Awareness Study Commission to study "[t]he type of activities that constitute agritourism when conducted on a bona fide farm and other relevant matters relating to agritourism activities"). Accordingly, we turn to the canons of judicial construction.
 

 N.C. Gen. Stat. § 153A-340(b)(2a) 's use of "including" to introduce examples of acceptable "rural" agritourism activities indicates the list
 
 *493
 
 is meant to be illustrative and not exhaustive. The statute does not define "rural."
 

 "[U]ndefined words are accorded their plain meaning so long as it is reasonable to do so." In determining the plain meaning of undefined terms, "this Court has used 'standard, nonlegal dictionaries' as a guide."
 

 Midrex Techs., Inc. v. N.C. Dep't of Revenue
 
 ,
 
 369 N.C. 250
 
 , 258,
 
 794 S.E.2d 785
 
 , 792 (2016) (alteration in original) (citations omitted);
 
 see also
 

 id
 
 . at 259,
 
 794 S.E.2d at 792
 
 (relying on the New Oxford American Dictionary to define "building," "construction," and "contractor"). The dictionary definition of "rural" is "in, relating to, or characteristic of the countryside rather than the town."
 
 New Oxford American Dictionary
 
 1531 (Angus Stevenson & Christine A. Lindberg eds. 3d ed. 2010). As petitioners concede in their brief, "hunting is a traditional rural activity." Under certain circumstances, activities incidental or relating to hunting that occur in, relate to, and are characteristic of the countryside, which retain the spirit of the traditional hunting, may reasonably fit within an example of a "rural" agritourism activity. Thus, for instance, operating a controlled hunting preserve
 
 *50
 
 for domestically raised game birds which supports a bona fide farm operation and allows the public "for recreational [or] entertainment purposes[ ] to ... enjoy [the] rural activit[y]" of traditional hunting may constitute agritourism. But the other shooting activities at issue here do not fit so squarely into this interpretation.
 

 Because N.C. Gen. Stat. § 153A-340(b)(2a) lists examples of rural activities, we turn to associative canons of construction. The interpretative canon of
 
 noscitur a sociis
 
 instructs that "associated words explain and limit each other" and an ambiguous or vague term "may be made clear and specific by considering the company in which it is found, and the meaning of the terms which are associated with it."
 
 City of Winston v. Beeson
 
 ,
 
 135 N.C. 271
 
 ,
 
 47 S.E. 457
 
 , 460 (1904) (citations omitted);
 
 see also
 

 State v. Emery
 
 ,
 
 224 N.C. 581
 
 , 583,
 
 31 S.E.2d 858
 
 , 860 (1944) ("
 
 Noscitur a sociis
 
 is a rule of construction applicable to all written instruments." (citation omitted) ). The interpretive canon of
 
 expressio unius est exclusio alterius
 
 instructs that the expression of one thing implies the exclusion of another.
 
 See, e.g.
 
 ,
 
 Fort v. Cty. of Cumberland
 
 ,
 
 218 N.C. App. 401
 
 , 407,
 
 721 S.E.2d 350
 
 , 355 (2012) (citations omitted).
 

 Applying the principle of
 
 noscitur a sociis
 
 to subdivision (2a)'s rural activity examples of "farming, ranching, historic, cultural, harvest-your-own activities, or other natural activities and attractions" imply that other contemplated rural agritourism activities should fit, in
 
 *494
 
 a categorical sense, within this grouping. The listed examples associate in part because they allow members of the non-rural public to view or enjoy traditional rural activities or attractions relating to agriculture that typically occur in a rural setting. The activities listed also associate in part because they are "natural," in that their performance preserves the land and does not require its alteration other than by public consumption of natural items on the land.
 
 Cf.
 

 Friends of Hatteras Island v. Coastal Res. Comm'n
 
 ,
 
 117 N.C. App. 556
 
 , 575,
 
 452 S.E.2d 337
 
 , 349 (1995) ("Hunting, fishing, navigation and recreation require only a temporary presence on the Reserve and do not necessitate alteration of the Reserve's undeveloped and natural state."). In applying the principle of
 
 expressio unius est exclusio alterius
 
 , however, that subdivision (2a) explicitly lists "farming" and "ranching" but not "hunting" implies that shooting activities, even when related to hunting, were not contemplated as "agritourism."
 

 Moreover, N.C. Gen. Stat. § 153A-340(b)(2a) defines "[a] building or structure used for agritourism" in relevant part as
 

 any building or structure used for public or private events, including, but not limited to, weddings, receptions, meetings, demonstrations of farm activities, meals, and other events that are taking place on the farm because of its farm or rural setting.
 

 Applying the principle of
 
 noscitur a sociis
 
 , the illustrative examples of agritourism buildings or structures include those used for "weddings, receptions, meetings, demonstrations of farm activities, [and] meals," events which share no commonality with hunting or shooting activities. Further, the inclusive phrase tying these examples together-"and other events that are taking place on the farm
 
 because of its farm and rural setting
 
 "-indicates the legislature did not contemplate buildings or structures used for shooting activities to be zoning-exempt agritourism buildings or structures. While shooting activities might require the land space that only a rural setting can provide, unlike the other event examples, they are not purposefully performed on a farm for the aesthetic value of the farm or its rural setting.
 

 "Where legislative intent is not readily apparent from the act, it is appropriate to look at various related statutes
 
 in pari materia
 
 so as to determine and effectuate the legislative intent."
 
 Craig v. Cty. of Chatham
 
 ,
 
 356 N.C. 40
 
 , 46,
 
 565 S.E.2d 172
 
 , 176-77 (2002) (citation omitted). Further, "words and phrases of a statute may not be interpreted out of context, but must be interpreted as a composite whole so as to harmonize
 
 *495
 
 with other statutory provisions and effectuate legislative intent, while avoiding absurd or illogical interpretations[.]"
 
 Fort
 
 ,
 
 218 N.C. App. at 407
 
 ,
 
 721 S.E.2d at 355
 
 (citations and quotations marks omitted).
 
 *51
 
 That N.C. Gen. Stat. § 99E-30(1) 's "agritourism activity" definition was incorporated into N.C. Gen. Stat. § 153A-340(b)(2a) indicates the legislature intended to shield the same agritourism activities from countywide zoning that it intended to shield from liability. Thus, we turn to N.C. Gen. Stat. § 99E-30(3) 's explanation of inherent risks of agritourism activity for further guidance, which provides in part:
 

 (3) Inherent risks of agritourism activity.-Those dangers or conditions that are an
 
 integral part of an agritourism activity
 
 including certain hazards, including surface and subsurface conditions, natural conditions of land, vegetation, and waters, the behavior of wild or domestic animals,
 
 and ordinary dangers of structures or equipment ordinarily used in farming and ranching operations
 
 .
 

 Id.
 

 § 99E-30(3) (2017) (emphasis added). That this provision lists as examples of inherent risks of agritourism activity "surface and subsurface conditions, natural conditions of land, vegetation, and waters, [and] the behavior of wild or domestic animals," relatively minor and rarer risks than those associated with shooting guns that would be integral to the shooting activities at issue here, supports our interpretation that such activities were not contemplated as "agritourism." Further, that the statute lists "ordinary dangers of ... equipment ordinarily used in farming and ranching operations" but not equipment such as guns used in hunting operations, buttresses an interpretation that shooting activities, even when done "in preparation for the hunt," were not contemplated as "agritourism."
 

 In summary, commercial shooting activities involving continental shooting towers, 3D archery courses and ranges, sporting clays, skeet and trap ranges, rifle ranges, and pistol pits neither fit as squarely within traditional notions of hunting, the definition of a "rural" activity, nor the category of a "natural" activity. Applying the principle of
 
 noscitur a sociis
 
 to N.C. Gen. Stat. § 153A-340(b)(2a), shooting activities that require the construction and use of artificial structures and the alteration of natural land, such as clearing farm property to operate gun ranges, share little resemblance to the listed rural agritourism activity examples or the same spirit of preservation or traditionalism. Applying that same principle to subdivision (2a)'s examples of agritourism events yields the same interpretation. Under the principle of
 
 expressio unius est exclusio
 

 *496
 

 alterius
 
 as applied to both N.C. Gen. Stat. § 153A-340(b)(2a) and N.C. Gen. Stat. § 99E-30(3), that these statutes list "farming" and "ranching" but not "hunting" implies that these shooting activities, even when done in preparation for a rural activity like traditional hunting, were not contemplated as "agritourism." Finally, N.C. Gen. Stat. § 99E-30(3) 's illustrative list of inherent risks of agritourism activities omits the typically greater risks of shooting guns that would be an integral danger to operating these commercial gun shooting activities.
 

 Accordingly, after our
 
 de novo
 
 review of the statutory farm exemption provisions, we agree with the superior court that commercial shooting activities involving the operation of continental shooting towers, 3D archery courses and ranges, sporting clay, skeet and trap ranges, rifle ranges, and pistol pits, even when performed on a bona fide farm, and even when done in preparation for the hunt, were not contemplated by our legislature as types of "agritourism" activities intended to be shielded from countywide zoning under the statutory farm exemption. We thus hold that these shooting activities do not constitute "agritourism" as a matter of law and are subject to zoning. Accordingly, we affirm the 2014 Order on this basis. In light of our decision, we need not address intervening-respondents' remaining challenge to the 2014 Order. Intervening-respondents, of course, may freely apply for conditional-use permits to continue operating these activities, but we hold that they do not constitute "agritourism" as a matter of law under our General Statutes.
 

 B. 2012 Order
 

 On appeal from the 2012 Order, intervening-respondents assert the superior court erred by remanding the 2011 Board Decision on the basis that (1) petitioners failed to meet their burden of presenting competent, substantial, and material evidence
 
 *52
 
 in support of their appeal to the Board of Adjustment; (2) the superior court erroneously concluded that petitioners had not been given an opportunity to be heard; and (3) the superior court misinterpreted the plain language of the Harnett County Unified Development Ordinance (UDO) and our General Statutes by concluding that there must be a nexus between agritourism activities offered on a bona fide farm and its farming operations in order to be shielded by the farm exemption.
 

 The linchpin holding together each alleged error is the superior court's conclusion that petitioners burden to support their appeal from the 2011 Board Decision was to present evidence "to establish that there was no requisite nexus between the Respondents' farming activities[ ] and shooting activities." Intervening-respondents contend
 
 *497
 
 that, because the shooting activities constitute "agritourism," no such nexus is required under the plain language of the UDO and our General Statutes. According to intervening-respondents, the UDO provides that "zoning provisions ... shall not apply to bona fide farms, as defined herein" and that the "use of any bona fide farm property for any non-farm use purposes shall be subject to the regulations of the Ordinance,
 
 with the exception of those uses determined to be agritourism
 
 , as defined by this Ordinance." (Emphasis added.) Thus, intervening-respondents continue, the superior court erred by finding that Drake Landing operates "on real property of Andrews Farms" and that "Andrews Farms is a bona fide farm pursuant to N.C. Gen. Stat. § 153A-340" but nonetheless remanding the matter to the Board with instructions to allow petitioners to present evidence that there was no connectivity between Drake Landing's shooting activities and Andrews Farms' farming operations when no such nexus is required for agritourism activities.
 

 However, because intervening-respondents failed to include the UDO in the appellate record, the authority upon which they primarily rely to support their main challenge to the 2012 Order, these issues are not properly before us.
 
 See
 

 Town of Scotland Neck v. W. Sur. Co.
 
 ,
 
 301 N.C. 331
 
 , 338,
 
 271 S.E.2d 501
 
 , 505 (1980) ("No Town ordinance ... was introduced, and we cannot take judicial notice of one if it exists." (citation omitted) );
 
 Beau Rivage Homeowners Ass'n v. Billy Earl, L.L.C.
 
 ,
 
 163 N.C. App. 325
 
 , 327,
 
 593 S.E.2d 120
 
 , 122 (2004) ("When no ordinance is presented to the appellate court through the record on appeal, the appellate court is not permitted to take judicial notice of the ordinance if it exists." (citation omitted) );
 
 see also
 

 Cty. of Durham v. Roberts
 
 ,
 
 145 N.C. App. 665
 
 , 671,
 
 551 S.E.2d 494
 
 , 498 (2001) (refusing to consider appellant's zoning-ordinance-interpretation argument where, although the ordinance was attached in an appendix to the appellate brief, it was not included in the appellate record: "[E]xternal documents included in the appendix to defendant's brief are not considered here.").
 

 Further, the practical effect of the 2012 Order was to remand the matter to the Board, which yielded the 2013 Board Decision and, ultimately, the 2014 Order on appeal. Because we have already determined that the superior court in its 2014 Order properly concluded that the challenged shooting activities do not constitute "agritourism" as a matter of law, and because we have already determined that the superior court in its 2017 Order properly affirmed the 2016 Board Decision that concluded the only remaining activity-Drake Landing's operation of its controlled hunting preserve for domestically raised game birds-is exempt from countywide zoning, and that petitioners are procedurally
 
 *498
 
 barred from objecting to that decision, no shooting activities remain to be challenged. Accordingly, we dismiss intervening-respondents' challenges to the 2012 Order on the grounds that they failed to include the UDO in the appellate record and on the grounds that, in light of our dispositions of the 2014 and 2017 Orders, their challenges to the 2012 Order are now moot.
 

 V. Conclusion
 

 Under N.C. Gen. Stat. §§ 160A-393(j) and (k)(1), the superior court was only required to address those issues raised by intervening-respondents' petition for
 
 certiorari
 
 review of the 2016 Board Decision and to ensure that intervening-respondents' rights were not prejudiced, as petitioners never raised any written objection to that decision,
 
 *53
 
 requested any alternative relief, or moved to intervene as a petitioner. The superior court also properly refused to consider petitioners' objections to the 2016 Board Decision for the first time at the
 
 certiorari
 
 hearing because petitioners were procedurally barred from challenging that decision by failing to comply with N.C. Gen. Stat. § 160A-393 's requirements. Accordingly, based on intervening-respondents' petition for
 
 certiorari
 
 review, and on petitioners' failures to timely challenge that decision, the superior court did not err by affirming the 2016 Board Decision. We thus affirm the 2017 Order.
 

 Additionally, based on our
 
 de novo
 
 interpretation of applicable provisions of the statutory farm exemption from countywide zoning, we hold that the particular outdoor shooting activities at issue here do not constitute "agritourism" as a matter of law and are thus subject to zoning. We therefore affirm the 2014 Order.
 

 Finally, because intervening-respondents have failed to include in the appellate record the UDO upon which they primarily rely to support their appeal from the 2012 Order, and because our resolutions of petitioners' appeal from the 2017 Order and intervening-respondents' appeal from the 2014 Order renders moot the issues they raised with respect to the 2012 Order, we dismiss intervening-respondents challenges to the 2012 Order.
 

 AFFIRMED IN PART; DISMISSED IN PART.
 

 Chief Judge McGEE concurs.
 

 Judge MURPHY concurs in result only.
 

 [1]
 

 Effective 12 July 2017, our General Assembly eliminated county authority to regulate swine farms by amending N.C. Gen. Stat. § 153A-340(b)(1) to now provide that countywide zoning "regulations may not affect property used for bona fide farm purposes; provided, however, that this subsection does not limit regulation ... with respect to the use of farm property for nonfarm purposes."
 
 See
 
 Act of July 12, 2017, ch. 108, sec. 9.(a), 2017 N.C. Sess. Laws ----, ---- (eliminating county authority to regulate swine farms).