IN THE COURT OF APPEALS OF NORTH CAROLINA

 2022-NCCOA-210

 No. COA21-192

 Filed 5 April 2022

 New Hanover County, No. 19-CVS-4028

 DAVID SCHROEDER and PEGGY SCHROEDER, Plaintiffs,

 v.

 CITY OF WILMINGTON and CITY OF WILMINGTON BOARD OF ADJUSTMENT,
 Defendants.

 Appeal and cross-appeal from a judgment and stay entered 15 October 2020 by

 Judge R. Kent Harrell in New Hanover County Superior Court. Heard in the Court

 of Appeals 17 November 2021.

 Nelson Mullins Riley & Scarborough, LLP, by John E. Branch, III, and Andrew
 D. Brown, and Institute for Justice, by Ari Bargil and Adam Griffin, for
 Plaintiffs-Appellees/Cross-Appellants.

 Poyner Spruill LLP, by N. Cosmo Zinkow and Robert E. Hagemann, and
 Deputy City Attorney Meredith T. Everhart, for Defendant-Appellant/Cross-
 Appellee City of Wilmington.

 INMAN, Judge.

¶1 The North Carolina Constitution establishes the State as sovereign, and local

 governments may exercise only those powers that our General Assembly “deem[s]

 advisable” through legislative enactment. N.C. Const. art. VII, § 1. When a legal

 question arises regarding the scope of a local government’s authority, it is the
 SCHROEDER V. CITY OF WILMINGTON

 2022-NCCOA-210

 Opinion of the Court

 judiciary’s duty to interpret the enabling law and apply it in accordance with the

 General Assembly’s intent. Occaneechi Band of Saponi Nation v. N.C. Comm’n of

 Indian Affairs, 145 N.C. App. 649, 653, 551 S.E.2d 535, 538 (2001). And when a local

 government enacts an ordinance asserting powers that exceed those granted by the

 General Assembly, we are compelled to invalidate the unauthorized action. King v.

 Town of Chapel Hill, 367 N.C. 400, 411, 758 S.E.2d 364, 373 (2014).

¶2 David and Peggy Schroeder (“Plaintiffs”) dispute the authority of the City of

 Wilmington (“Wilmington”) to enact a zoning ordinance restricting short-term rentals

 through a registration and lottery process. Plaintiffs presented several state law and

 constitutional law rationales to the trial court. The trial court dismissed Plaintiffs’

 constitutional challenges but agreed that the zoning ordinance was entirely invalid

 based on a statute and its amended recodification precluding local governments from

 “requir[ing] any owner or manager of rental property . . . to register rental property

 with the local government.” N.C. Gen. Stat. § 160A-424(c) (2017), recodified as

 amended at N.C. Gen. Stat. § 160D-1207(c) (2021).

¶3 The trial court stayed its judgment, and both parties appeal. Wilmington

 challenges the judgment and Plaintiffs challenge the dismissal of their constitutional
 SCHROEDER V. CITY OF WILMINGTON

 2022-NCCOA-210

 Opinion of the Court

 claims and the entry of a stay.1

¶4 After careful review, we affirm the trial court’s judgment that the registration

 and lottery provisions of Wilmington’s ordinance are invalid under Section 160D-

 1207(c) of our General Statutes. But we reverse the portion of the judgment striking

 provisions of the Wilmington ordinance that are not prohibited by statute and are

 severable from the invalid provisions. Because our holding renders moot Plaintiffs’

 constitutional challenges to the ordinance, we do not reach Plaintiffs’ cross-appeal.

 I. FACTUAL AND PROCEDURAL HISTORY

¶5 The record below and our General Statutes disclose the following:

 A. The General Assembly Restricts Permitting, Permission, and
 Registration Requirements for Residential Rentals

¶6 In 2011, the General Assembly enacted a statute prohibiting cities from

 penalizing or restraining the rental of residential real property absent “reasonable

 cause.” 2011 N.C. Sess. Laws 1034, 1034, ch. 281. That statute, Section 160A-424(c),2

 prohibited cities from “requir[ing] any owner or manager of rental property to obtain

 any permit or permission from the city to lease or rent.” N.C. Gen. Stat. § 160A-424(c)

 1 Plaintiffs moved this Court to dissolve the stay by separate motion, and we denied

 that motion by order entered 20 April 2021. Because Plaintiffs concede that we have already
 decided this issue against them and they advance their arguments strictly for preservation
 purposes, we do not revisit that issue in this opinion.
 2 Our General Statutes are organized by subject matter into chapters, which may be

 further subdivided into subchapters, articles, parts, or subparts. A “Section” is the text of
 the law itself, and sections are placed within the chapters and their various subdivisions.
 SCHROEDER V. CITY OF WILMINGTON

 2022-NCCOA-210

 Opinion of the Court

 (2011). The statute provided an exception allowing cities to “levy a fee for residential

 rental property registration under subsection (c)” if the rental units in question had

 a sufficient number of local ordinance violations or were hotspots for criminality. Id.

 § 160A-424(d) (emphasis added). Subsection (d) further allowed cities “that charge[d]

 registration fees for all residential rental properties as of June 1, 2011” to continue

 to do so according to a specific fee schedule. Id.

¶7 As the land development statutes were codified at the time Section 160A-424(c)

 was originally enacted, municipal land development regulatory powers were found in

 Article 19, “Planning and Regulation of Development,” of Chapter 160A, “Cities and

 Towns.” County land development regulatory powers were located in Article 18,

 “Planning and Regulation of Development,” in Chapter 153A, “Counties.” Thus, the

 statutes authorizing local governments to regulate land uses were codified in two

 separate chapters, depending on the body politic. Section 160A-424(c), as a statute

 governing municipalities, was located in Part 5, “Building Inspection,” of Article 19

 in Chapter 160A. Organizationally, this placed Section 160A-424(c) apart from our

 municipal zoning laws, which were located in Part 3, “Zoning,” of Article 19 in

 Chapter 160A.

¶8 In 2017, the General Assembly added language to Section 160A-424(c) to bar

 cities from “requir[ing] any owner or manager of rental property to obtain any permit

 or permission . . . to lease or rent . . . or to register rental property with the city.” N.C.
 SCHROEDER V. CITY OF WILMINGTON

 2022-NCCOA-210

 Opinion of the Court

 Gen. Stat. § 160A-424(c) (2017) (emphasis added). The statute continued the

 exceptions for properties that repeatedly violated building codes or were sites of

 substantial criminal activity. Id. The amended statute repealed the subsection that

 allowed the uniform rental registration programs predating June 2011 to continue,

 ending the authorization of those programs. Id. § 160A-424(d).

 B. Wilmington Regulates Short-Term Rentals Through Registration

¶9 Against this statutory backdrop, Wilmington sought to protect its

 neighborhoods and housing market from the impact of widespread short-term

 rentals. Wilmington’s City Council identified concerns including “undue

 commercialization and disruption to the primary and overarching purpose of a

 neighborhood being first and foremost a residential community, where people

 actually live,” and the possibility that “inordinate reductions in the supply of housing

 available for standard rentals for the citizens of Wilmington could have a

 destabilizing effect on housing affordability.” These concerns led Wilmington to enact

 a zoning ordinance (the “Ordinance”) in January 2019 regulating short-term rentals

 within city limits in an effort to balance their negative effects against the benefits of

 a “properly regulated” short-term rental market—including “assisting property

 owners to keep properties in good repair, which, in turn, stabilizes home ownership,

 maintains property values, and strengthens the economy of the City.”

¶ 10 The Ordinance restricted short-term rentals to specific zoning districts,
 SCHROEDER V. CITY OF WILMINGTON

 2022-NCCOA-210

 Opinion of the Court

 required at least 400 feet of separation between short-term rentals, and capped the

 total percentage of short-term rentals at two percent of residential parcels within

 Wilmington’s 1945 Corporate Limits and two percent of residential parcels outside

 the same. To implement the separation and cap requirements, the Ordinance

 required short-term rental operators to register their properties. Initial registrations

 were to be doled out in conformity with the separation and cap requirements by

 lottery. Registrations would terminate if not renewed annually, upon transfer of the

 subject property, or for violations of law, and registrations filed after the initial

 lottery would be received and processed on a first-come, first-served basis. Existing

 short-term rental operators who failed to obtain a registration by lottery were

 required to cease short-term rentals by the end of a one-year amortization period.

 Other sections of the Ordinance imposed health, safety, and similar requirements,

 such as requiring short-term rental operators to conspicuously post the dates for

 garbage collection and the non-emergency telephone number for the Wilmington

 Police Department.

 C. Plaintiffs’ Challenge

¶ 11 Plaintiffs own a townhome in the Lions Gate community of Wilmington, which

 they used as a short-term rental without any reported problems prior to the

 enactment of the Ordinance. After the Ordinance was passed, Plaintiffs registered

 their property but lost in the initial lottery, as another property within 400 feet of
 SCHROEDER V. CITY OF WILMINGTON

 2022-NCCOA-210

 Opinion of the Court

 their townhouse drew a lower lottery number. Plaintiffs appealed to the Wilmington

 Board of Adjustment, which upheld Wilmington’s denial of registration.

¶ 12 With no other administrative avenues available to them, Plaintiffs filed a

 declaratory judgment action in October 2019 to challenge the validity of the

 Ordinance, alleging it violated Section 160A-424(c)’s prohibition against ordinances

 “that would require any owner or manager of rental property to obtain any permit or

 permission from the city to lease or rent residential real property or to register rental

 property with the city.”3

 D. The General Assembly Reorganizes and Recodifies Local Land Use
 Regulatory Statutes

¶ 13 In July 2019, shortly before Plaintiffs filed suit, the General Assembly

 amended and recodified statutes concerning local government regulation of short-

 term rentals, including Section 160A-424(c). On 1 July 2019, the General Assembly

 enacted Session Law 2019-73 to explicitly place vacation rentals under the ambit of

 Section 160A-424. 2019 N.C. Sess. Laws 300, 300, ch. 73, § 1. Ten days later, the

 General Assembly amended and recodified Section 160A-424 as part of a session law

 3 Plaintiffs also brought several facial and as-applied challenges to the Ordinance

 under the North Carolina Constitution and have cross-appealed the later dismissal of those
 claims to this Court. Because we hold that the allegedly unconstitutional portions of the
 Ordinance are preempted on statutory grounds, we dismiss as moot Plaintiffs’ cross-appeal
 arguing the unconstitutionality of the Ordinance. Chavez v. McFadden, 374 N.C. 458, 467,
 843 S.E.2d 139, 147 (2020).
 SCHROEDER V. CITY OF WILMINGTON

 2022-NCCOA-210

 Opinion of the Court

 captioned, “An Act to Clarify, Consolidate, and Reorganize the Land-Use Regulatory

 Laws of the State.” 2019 N.C. Sess. Laws 424, 424, ch. 111 (hereinafter “the Act”).

 Part II of the Act—which contains the recodification of Section 160A-424—is titled

 “Provisions to Reorganize, Consolidate, Modernize, and Clarify Statutes Regarding

 Local Planning and Development Regulation.” Id. at 439, ch. 111.

¶ 14 Part II of the Act at issue in this case provides:

 . . . The intent of the General Assembly by enactment of
 Part II of this act is to collect and organize existing statutes
 regarding local planning and development into a single
 Chapter of the General Statues and to consolidate the
 statutes affecting cities and counties.

 . . . The intent of the General Assembly by enactment of
 Part II of this act is to neither eliminate, diminish, enlarge,
 nor expand the authority of local governments to exact
 land, construction, or money as part of the development
 approval process or otherwise materially alter the scope of
 local authority to regulate development . . . .

 Id. at 439, ch. 111, §§ 2.1.(e)–(f). Part II relocated the previously scattered patchwork

 of planning and development statutes into a single new chapter, Chapter 160D. Id.

 at 439, ch. 111, § 2.4. The Act also expressly provides that “Part II of this act clarifies

 and restates the intent of existing law and applies to ordinances adopted before, on,

 and after the effective date.” Id. at 547, ch. 111, § 3.2. As an express clarifying

 amendment of declared retroactive effect, the Act’s recodification retroactively

 applied to Wilmington’s Ordinance.
 SCHROEDER V. CITY OF WILMINGTON

 2022-NCCOA-210

 Opinion of the Court

¶ 15 The new Chapter 160D is organized into 14 Articles. Chapter 160D maintains

 the structural separation between zoning and building code inspection that existed

 in the previous codification of our land regulation statutes. Zoning is now found in

 Article 7, “Zoning Regulation,” N.C. Gen. Stat. §§ 160D-701, et seq.; building code

 enforcement in Article 11, “Building Code Enforcement,” id. §§ 160D-1101, et seq.;

 and minimum housing standards in Article 12, “Minimum Housing Codes.” Id. §§

 160D-1201, et seq. The Act recodified Section 160A-424 as Section 160D-1207, placing

 it among the minimum housing standard statutes in Article 12.4 Id. §§ 160D-1201,

 et seq.

¶ 16 The General Assembly also modified the language regarding the prohibitions

 against permitting, permissions, and registrations applicable to residential rentals.

 The new statute, with additions marked in bold and deletions struck through, now

 reads:

 In no event may a city local government do any of the
 following: (i) adopt or enforce any ordinance that would
 require any owner or manager of rental property to obtain
 any permit or permission under Article 11 or Article 12
 of this Chapter from the city local government to lease
 or rent residential real property or to register rental
 property with the city local government.

 4 The sections in Chapter 160D are generally numbered sequentially according to their

 placement in the Chapter. The amended statutory language at issue here is found in the
 seventh section of Article 12 in Chapter 160D, hence Section 160D-1207.
 SCHROEDER V. CITY OF WILMINGTON

 2022-NCCOA-210

 Opinion of the Court

 Compare N.C. Gen. Stat. § 160A-424(c) (2017), with N.C. Gen. Stat. § 160D-1207(c)

 (2021).

 E. The Trial Court Concludes the Ordinance Is Preempted by Statute

¶ 17 Wilmington moved to dismiss Plaintiffs’ complaint. The trial court dismissed

 Plaintiffs’ constitutional claims by order entered 11 March 2020. Wilmington then

 filed its answer and moved for summary judgment in its favor, while Plaintiffs moved

 to amend their complaint to explicitly address, among other things, the changes to

 and recodification of Section 160A-424(c) as Section 160D-1207(c). The trial court

 denied this motion by order entered on 3 September 2020, and on 15 September 2020,

 the trial court granted summary judgment to Plaintiffs, declaring the entirety of the

 Ordinance void based on the conclusion that Section 160A-424(c) and its revised

 codification at Section 160D-1207(c) unambiguously prohibited Wilmington’s short-

 term rental registration scheme.

¶ 18 Wilmington moved for a stay of the trial court’s judgment shortly after entry.

 The trial court granted that motion as to all parties except Plaintiffs who, by statute,

 enjoyed a stay of the Ordinance’s enforcement against them during litigation. The

 trial court’s ruling on summary judgment and the entry of the stay were then

 consolidated into a final judgment entered 15 October 2020, and both parties filed

 timely notices of appeal.
 SCHROEDER V. CITY OF WILMINGTON

 2022-NCCOA-210

 Opinion of the Court

 II. ANALYSIS

¶ 19 This appeal requires us to resolve three competing interpretations and

 applications of Sections 160A-424(c) and its successor statute 160D-1207(c): by the

 trial court, by Plaintiffs, and by Wilmington. Section 160A-424(c) prohibited

 Wilmington from enacting an ordinance that required a short-term rental operator

 “to obtain any permit or permission from the city to lease or rent . . . or to register

 rental property with the city.” N.C. Gen. Stat. § 160A-424(c). When it recodified the

 statute as Section 160D-1207(c), the legislature added nine words that have spawned

 the differing interpretations before us, prohibiting Wilmington from requiring short-

 term rental operators “to obtain any permit or permission under Article 11 or

 Article 12 of this Chapter . . . to lease or rent . . . or to register rental property.”

 N.C. Gen. Stat. § 160D-1207 (emphasis added).5

¶ 20 The trial court concluded that Section 160D-1207(c) prohibits Wilmington from

 requiring: (1) permits and permissions to rent under Articles 11 and 12; and (2) all

 registrations of rental property. Plaintiffs construe the new language to prohibit (1)

 all permits to lease or rent; (2) permissions to rent under Articles 11 and 12; and (3)

 all registrations of rental property as a condition to rent. Wilmington advocates a

 third reading, contending the added cross-reference to Articles 11 and 12 modifies the

 5 Section 160D-1207 includes several specific exceptions that are not at issue in this

 case, so we do not address them.
 SCHROEDER V. CITY OF WILMINGTON

 2022-NCCOA-210

 Opinion of the Court

 scope of “permits,” “permissions,” and registrations, so that local governments are

 authorized to use their zoning powers—found in Article 7—to implement registration

 schemes on short-term rentals.

¶ 21 After reviewing the language of the statutes, we hold that Wilmington’s

 registration requirements for rentals, and those provisions of the ordinance

 inseparable from them, are prohibited by state statute and therefore invalid, and we

 affirm the trial court’s judgment in this respect. However, because several of the

 Ordinance’s provisions are severable from the invalid registration provisions, we

 reverse the trial court’s judgment in part and remand for entry of a judgment that

 invalidates the registration requirement and those provisions insevarable from it, but

 leaves the severable sections, described below, intact.

 A. Standard of Review

¶ 22 We review the trial court’s entry of summary judgment de novo. JVC Enters.,

 LLC v. City of Concord, 376 N.C. 782, 2021-NCSC-14, ¶8. Summary judgment is

 proper when there are no genuine issues of material fact and judgment in favor of a

 party is appropriate as a matter of law. Id. The same de novo standard applies to

 questions of statutory interpretation. Id.
 SCHROEDER V. CITY OF WILMINGTON

 2022-NCCOA-210

 Opinion of the Court

 B. Section 160A-424(c) Unambiguously Prohibited Wilmington’s
 Registration Ordinance

¶ 23 When the Ordinance was first enacted, Section 160A-424(c) generally

 precluded cities from “requir[ing] any owner or manager of rental property . . . to

 obtain any permit or permission . . . to lease or rent residential real property or to

 register rental property with the city.” N.C. Gen. Stat. § 160A-424(c) (2017). Thus,

 the statute prohibited two categories of regulation: (1) permits or permissions to lease

 or rent; and (2) registrations of rental property. The statutory language is in no way

 ambiguous, so it must be afforded its plain effect without reference to canons of

 statutory interpretation. See, e.g., Jeffries v. Cnty. of Harnett, 259 N.C. App. 473,

 488, 817 S.E.2d 36, 48 (2018) (“[W]hen the language of a statute is clear and

 unambiguous, there is no room for judicial construction and the courts must give it

 its plain and definite meaning.” (citation and quotation marks omitted)). The

 Ordinance is prohibited by the statute’s straightforward language to the extent it

 requires Plaintiffs “to register rental property with the city.” N.C. Gen. Stat. § 160A-

 424(c).

¶ 24 Wilmington asserts that Section 160A-424(c) was only intended to limit

 registration requirements in the context of building code inspections—not zoning—

 by pointing out that it was included in a part of our General Statutes that, per its

 title, related to municipal building inspections. But, because Section 160A-424(c) is
 SCHROEDER V. CITY OF WILMINGTON

 2022-NCCOA-210

 Opinion of the Court

 unambiguous, our analysis begins and ends with the plain meaning of the text, and

 we need not consult its placement in a building inspection statute to discern the

 legislature’s intent. Appeal of Forsyth County, 285 N.C. 64, 71, 203 S.E.2d 51, 55

 (1974) (“The law is clear that captions of a statute cannot control when the text is

 clear.” (citation omitted)); First Bank v. S&R Grandview, L.L.C., 232 N.C. App. 544,

 551, 755 S.E.2d 393, 397 (2014) (noting that “the placement of a statute within an act

 is less probative of legislative intent than the plain language of the statute itself” and

 holding the placement of a plain and unambiguous statute had no bearing on the

 interpretation of its plain language). But see Ray v. N.C. Dept. of Transp., 366 N.C.

 1, 8, 727 S.E.2d 675, 681 (2012) (observing that “even when the language of a statute

 is plain, the title of an act should be considered in ascertaining the intent of the

 legislature” where there was no question as to the plain meaning of a statutory

 amendment but only whether the amendment was intended to apply retroactively or

 prospectively) (citation and quotation marks omitted)).

 C. Recodification as Section 160D-1207(c) Did Not Alter the Restriction
 Against Registrations

¶ 25 Our review of Section 160D-1207(c), in context with the rest of Chapter 160D

 and together with Section 160A-424(c)’s prior unambiguous language, leads us to hold

 that the registration provisions of the Ordinance are invalid. We hold that Section

 160D-1207(c) continues to impose a disjunctive list of two prohibitions, restricting
 SCHROEDER V. CITY OF WILMINGTON

 2022-NCCOA-210

 Opinion of the Court

 local governments from:

 requir[ing] any owner or manager of rental property [1] to
 obtain any permit or permission under Article 11 or Article
 12 of this Chapter from the local government to lease or
 rent residential real property or [2] to register rental
 property with the local government. . . .

 N.C. Gen. Stat. § 160D-1207(c). The Ordinance’s registration provisions thus remain

 preempted by statute.

¶ 26 This reading of Section 160D-1207(c) avoids any violence to the statutory

 language and structure. It also continues to treat “permit or permission . . . to lease

 or rent” as a single category of prohibited regulatory action separate from

 “registrations”—just as was demanded by the unambiguous language of its

 predecessor statute, Section 160A-424(c).

¶ 27 Treating “permit or permission” of a like kind and as a single categorical

 phrase also accords with the construction of Chapter 160D itself. Article 11’s statutes

 explicitly refer to “permits” and other approval mechanisms. Except for the

 prohibition against permits at issue here, Article 12’s statutes do not expressly refer

 to “permits,” but they do contemplate other forms of governmental approvals, i.e.,

 permissions. Compare N.C. Gen. Stat. §§ 160D-1101, et seq. (providing for building

 code enforcement powers through the issuance of building permits and other forms of

 written approvals for work), with N.C. Gen. Stat. §§ 160D-1201, et seq. (allowing for

 adoption and enforcement of minimum housing code ordinances without specifically
 SCHROEDER V. CITY OF WILMINGTON

 2022-NCCOA-210

 Opinion of the Court

 referencing permitting).6 Thus, applying the statutory cross-reference to both

 “permit or permission” and treating them together results in a general prohibition

 against requiring government approval to lease or rent, however required under

 Articles 11 or 12, that aligns with the structure of those Articles. See, e.g., Elec.

 Supply Co. of Durham, Inc. v. Swain Elec. Co., 328 N.C. 651, 656, 403 S.E.2d 291,

 294 (1991) (“[W]e are guided by the structure of the statute and certain canons of

 statutory construction.” (citations omitted)).

¶ 28 We acknowledge that this reading appears, in some sense, to conflict with the

 provisions of Chapter 160D’s enabling session law that express an intention to clarify,

 rather than change, the law. But every interpretation before this Court results in

 some substantive alteration, as each imposes some restriction where the prior

 unambiguous language of Section 160A-424(c) contained none.7 In this circumstance,

 we must attempt to construe the provisions of Chapter 160D’s enabling session law

 together, and “harmonize such statutes, if possible, and give effect to each.” Town of

 6 For example, Section 160D-1112 in Article 11 provides that post-permit changes to

 construction are only allowed if they “are clearly permissible under the State Building Code”
 or are made pursuant to “specific written approval of the proposed changes . . . [by] the
 inspection department.” N.C. Gen. Stat. § 160D-1112 (2021). Article 12, meanwhile, allows
 a local administrative tribunal to close dwellings unfit for human habitation by order—rather
 than permit—until repairs are completed and habitation may resume. N.C. Gen. Stat. §
 160D-1203(3)(a) (2021).
 7 Ironically, the “clarifying” changes in Section 160D-1207 have now rendered the

 statute ambiguous. See Winkler v. N.C. State Bd. of Plumbing, Heating & Fire Sprinkler
 Contractors, 374 N.C. 726, 730, 843 S.E.2d 206, 211 (2020) (holding a statute was ambiguous
 where “the provision at issue is equally unsusceptible of each proposed interpretation”).
 SCHROEDER V. CITY OF WILMINGTON

 2022-NCCOA-210

 Opinion of the Court

 Blowing Rock v. Gregorie, 243 N.C. 364, 371, 90 S.E.2d 898, 904 (1956).

¶ 29 Our reading of Section 160D-1207(c) seeks to harmonize the clarifying intent

 of the legislature with the imposition of a new limitation on local government

 authority to the extent possible. It aligns with and continues the clear original

 legislative intent, previously expressed in Section 160A-424(c), to provide two

 disjunctive restrictions: (1) prohibiting permits and permissions to lease or rent (now

 clarified as permits or permissions pursuant to Articles 11 or 12), and (2) prohibiting

 registrations of rental properties. In other words, Section 160A-424(c)

 unambiguously restricted permits or permissions to the same and equal extent, and

 our reading of Section 160D-1207(c) continues to treat them identically. Similarly,

 Section 160A-424(c) treated the restriction against permits and permissions

 separately from the prohibition against registrations, and our interpretation of

 Section 160D-1207(c) maintains this division, as we do not apply the statutory cross-

 reference to Articles 11 and 12 inserted into the clause restricting permits and

 permissions as applying to registrations. As discussed below, neither interpretation

 of Section 160D-1207(c) suggested by the parties allows for this same symmetry when

 compared to the original, unambiguous language contained in Section 160A-424(c).

¶ 30 In sum, we hold that the General Assembly enacted Section 160D-1207(c) to

 clarify that the restriction against permits or permissions to lease or rent originally

 found in Section 160A-424(c) applied only to the government approvals now found in
 SCHROEDER V. CITY OF WILMINGTON

 2022-NCCOA-210

 Opinion of the Court

Articles 11 and 12. The language added in Section 160D-1207(c) does not suggest

that the legislature intended to modify the structure of the previous unambiguous

statute precluding registrations generally, nor does it suggest treating

“permission[s] . . . to lease or rent” as a separate category of prohibition from

“permit[s] . . . to lease or rent.” We agree with the trial court’s interpretation of

Section 160D-1207(c) as prohibiting local governments from requiring a short-term

rental owner to obtain a permit to rent under Articles 11 or 12, a permission to rent

under the same Articles, or to register the property as a rental with the government.8

The provisions of Wilmington’s Ordinance requiring such a registration—as well as

any provisions that are inseverable from that initial registration requirement—are

preempted by Section 160D-1207(c) and its unambiguous predecessor Section 160A-

424(c).9

 8 We do not interpret Sections 160A-424(c) or 160D-1207(c) as exempting rental
properties from all zoning or permitting requirements; as Plaintiffs conceded at oral
argument, even their reading would not preclude Wilmington from zoning or requiring
Plaintiffs to obtain a building permit to construct an addition to their property. Our reading
does not prohibit these actions either and only limits “permit[s] . . . under Article 11 or Article
12 . . . to lease or rent.” N.C. Gen. Stat. § 160D-1207(c) (emphasis added).
 9 Wilmington asserts that our interpretation would allow it to replace “register” with

“permit” in the Ordinance and reenact it under Article 7 without violating Section 160D-
1207(c). But such a hypothetical ordinance is not before us today and would be open to legal
challenges asserting that the statute’s language should be applied to reach any “permit” that
is, in all practical effect, a registration otherwise barred by the statute. Cf. Mazda Motors of
America, Inc. v. Southwestern Motors, Inc., 296 N.C. 357, 361, 250 S.E.2d 250, 253 (1979)
(“ ‘[W]here a literal interpretation of the language of a statute will lead to absurd results, or
contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and
 SCHROEDER V. CITY OF WILMINGTON

 2022-NCCOA-210

 Opinion of the Court

 D. The Parties’ Preferred Interpretations Fail

¶ 31 In adopting the trial court’s interpretation of Section 160D-1207(c), we reject

 the competing interpretations proposed by the parties.

¶ 32 Plaintiffs’ proposed interpretation of the statute would rework the language

 and punctuation of the statute in the following manner, reflected in bold, to provide

 that local governments are prohibited from:

 requir[ing] any owner or manager of rental property[:] [1]
 to obtain any permit [from the local government to
 lease or rent residential real property;] or [2] [to
 obtain] permission under Article 11 or Article 12 of this
 Chapter from the local government to lease or rent
 residential real property[;] or [3] to register rental
 property with the local government [to lease or rent
 residential real property]. . . .

 N.C. Gen. Stat. § 160D-1207(c).

¶ 33 Plaintiffs’ proffered interpretation—which they contend is the only

 unambiguous reading—requires a substantial revision of the statutory language;

 truly unambiguous statutes require no modification to be given their plain effect. See

 In re Banks, 295 N.C. 236, 239, 244 S.E.2d 386, 388-89 (1978) (“When the language

 purpose of the law shall control and the strict letter thereof shall be disregarded.’ ” (quoting
 State v. Barksdale, 181 N.C. 621, 625 107 S.E. 505, 507 (1921))). Because Wilmington’s
 hypothetical ordinance is not before us, we decline to resolve whether such an ordinance
 would be preempted by Section 160D-1207(c). See Chavez, 374 N.C. at 467, 843 S.E.2d at
 147 (noting our appellate courts do not “ ‘determine matters purely speculative, enter
 anticipatory judgments, declare social status, deal with theoretical problems, give advisory
 opinions, answer moot questions, adjudicate academic matters, provide for contingencies
 which may hereafter arise, or give abstract opinions’ ” (citation omitted)).
 SCHROEDER V. CITY OF WILMINGTON

 2022-NCCOA-210

 Opinion of the Court

 of a statute is clear and unambiguous, . . . the courts must give the statute its plain

 and definite meaning, and are without power to interpolate, or superimpose,

 provisions and limitations not contained therein.”); Lunsford v. Mills, 367 N.C. 618,

 623, 766 S.E.2d 297, 301 (2014) (noting that, in applying an unambiguous statute, “it

 is our duty to give effect to the words actually used in a statute and not to delete

 words used or to insert words not used”). And Plaintiffs offer no rule of grammar or

 construction that would allow us to transpose the modifier “to lease or rent” to the

 later restriction on registrations. Plaintiffs acknowledge that the prohibition on

 registration “follows in a completely separate clause” from “permit[s] or

 permission[s] . . . to lease or rent.”

¶ 34 Plaintiffs argue that “it is impossible to conceive of a permitting scheme that

 did not also in some sense require registration. . . . [A] bar on registrations would

 sweep up practically any permitting scheme.” But if this is true, Plaintiffs’ reading

 of the statute would render its provisions redundant: the legislature would not need

 to prohibit permits to lease or rent and registrations to lease or rent separately if a

 ban on the latter encompassed the former. See State v. Morgan, 372 N.C. 609, 614,

 831 S.E.2d 254, 258 (2019) (“We are further guided in our decision by the canon of

 statutory construction that a statute may not be interpreted in a manner which would
 SCHROEDER V. CITY OF WILMINGTON

 2022-NCCOA-210

 Opinion of the Court

 render any of its words superfluous.” (citation and quotation marks omitted)).10 And,

 because this interpretation presumes the legislature intended to create three

 categories of restrictions—(1) permits, (2) permissions under Articles 11 or 12, and

 (3) registrations—when the unambiguous language of Section 160A-424(c) only

 imposed two—(1) permits or permissions, and (2) registrations—we decline to adopt

 it as the “clarified” meaning of Section 160A-424(c).

¶ 35 We also disagree with Wilmington’s argument that the statutory cross-

 references added to Section 160D-1207(c) limit the general prohibition against

 registrations originally found in Section 160A-424(c). Under that reading, Section

 160D-1207(c) prohibits local governments from:

 requir[ing] . . . any permit or permission under Article 11
 or Article 12 . . . from the local government[:] [1] to lease or
 rent residential real property or[;] [2] to register rental
 property with the local government.

 10 Our reading of the statute does not result in this redundancy. By prohibiting
 “permit[s] or permission[s] under Article 11 or Article 12 of this Chapter . . . to lease or rent”
 together, the General Assembly identified what permits it intended to curtail in Section
 160D-1207(c). The registration prohibition is then read in context not to encompass all
 permits, but instead to prohibit any ordinance that requires the landowner to register as a
 residential rental with the government under any article and however imposed. See City of
 Asheville v. Frost, 370 N.C. 590, 592, 811 S.E.2d 560, 562 (2018) (“In interpreting a statute,
 a court must consider the statute as a whole and determine its meaning by reading it in its
 proper context and giving its words their ordinary meaning.”). Cf. Jeffries, 259 N.C. App. at
 493, 817 S.E.2d at 50 (“The interpretative canon of noscitur a sociis instructs that ‘associated
 words explain and limit each other’ and an ambiguous or vague term ‘may be made clear and
 specific by considering the company in which it is found, and the meaning of the terms which
 are associated with it.” (citation omitted)).
 SCHROEDER V. CITY OF WILMINGTON

 2022-NCCOA-210

 Opinion of the Court

 Thus, Wilmington asserts that Sections 160A-424(c) and 160D-1207(c) prohibit,

 among other things, “permission[s]. . . to register” under Articles 11 and 12. But

 Wilmington’s able counsel conceded in oral argument that no statute in Article 11 or

 12—or anywhere else in the General Statutes—references a “permission to register”

 scheme.

¶ 36 Counsel for Wilmington offered a singular example of a “permission to register”

 regime, contending a city could restrict short-term rentals to certain zoning districts

 and then require short-term rental operators to register. In such a circumstance,

 only those in the proper zoning district would have “permission to register” as a short-

 term rental.11 But this example—the only one put forward by Wilmington—is self-

 defeating: if “permission to register” only arises through the exercise of a local

 government’s Article 7 zoning powers, there would be no need for the General

 Assembly to prohibit “permission to register” under Articles 11 and 12. We will not

 read the statute as prohibiting something that does not appear to exist. Such a

 reading runs counter to the mandate that “a statute must be construed, if possible,

 to give meaning and effect to all of its provisions.” HCA Crossroads Residential Ctrs.

 v. N.C. Dept. of Human Res., 327 N.C. 573, 578, 398 S.E.2d 466, 470 (1990). See also

 11 Even this example does not align with the statute when its words are given their

 common and ordinary meaning, as a zoning ordinance allowing for certain uses in a district
 would not put any positive burden on the landowner “to obtain . . . permission” to engage in
 those uses.
 SCHROEDER V. CITY OF WILMINGTON

 2022-NCCOA-210

 Opinion of the Court

 Estate of Jacobs v. State, 242 N.C. App. 396, 402, 775 S.E.2d 873, 877 (2015)

 (declining to adopt an interpretation rendering a statute’s provisions “superfluous or

 nonsensical”).

 E. The Trial Court Erred in Invalidating the Entire Ordinance

¶ 37 Though we hold that the trial court correctly concluded that the Ordinance is

 invalid to the extent that it is preempted by Section 160D-1207(c), we disagree that

 the entirety of the Ordinance fails as a result.

¶ 38 Section 14 of the Ordinance states, “if any . . . portion of this ordinance is for

 any reason held invalid or unconstitutional by any court of competent jurisdiction,

 such portion shall be deemed severable and such holding shall not affect the validity

 of the remaining portions thereof.” We will give effect to this clause to preserve any

 provisions that are “not so interrelated or mutually dependent” on the invalid

 registration requirements that their enforcement “could not be done without

 reference to the offending part.” Fulton Corp. v. Faulkner, 345 N.C. 419, 422, 481

 S.E.2d 8, 9 (1997). Non-offending sections of the Ordinance that are “complete in

 [themselves] and capable of enforcement” will remain in effect. Id. Stated differently,

 “[w]e will sever a provision of an otherwise valid ordinance when the enacting body

 would have passed the ordinance absent the offending portion.” King, 367 N.C. at

 410, 758 S.E.2d at 372 (citation omitted).

¶ 39 Several provisions of the Ordinance are so intertwined with the invalid
 SCHROEDER V. CITY OF WILMINGTON

 2022-NCCOA-210

 Opinion of the Court

 registration requirement that they are likewise preempted by Section 160D-1207(c),

 namely: (1) the cap and distance requirements and their predicate registration

 provisions, i.e., the entirety of Secs. 18-331.2 and 18-331.4;12 (2) the proof of shared

 parking or parking space rental and the submission of all shared parking agreements

 to the city attorney for approval prior to registration, as found in Sec. 18-331.5; (3)

 the registration termination provisions, i.e, the entirety of Secs. 18-331.8-.9 and .13;

 (4) the requirement that a registration number be posted in a short-term rental, as

 found in Sec. 18-331.14(d); (5) Sec. 18-331.7’s limited application to “registered” uses

 only; and (6) the amortization of short-term rentals without a registration, i.e., the

 entirety of Sec. 18-331.17.

¶ 40 The remainder of the Ordinance does not require registration to be enforceable

 and gives effect to Wilmington’s intent in enacting the Ordinance. For example, the

 requirement that each short-term rental operator provide one off-street parking space

 per bedroom does not require registration to be effective or enforceable; a customer

 may rent a short-term rental assuming compliance with this provision and inform

 Wilmington of a violation should parking prove inadequate. Similarly, the

 prohibition against cooking in bedrooms or the requirement that operators

 12 To avoid possible confusion, our citations refer to Section 18-331 of Chapter 18,

 Article 6 of Wilmington’s Land Development Code, as amended by the Ordinance and set
 forth in the record on appeal.
 SCHROEDER V. CITY OF WILMINGTON

 2022-NCCOA-210

 Opinion of the Court

 conspicuously post the non-emergency telephone number for the Wilmington Police

 Department are not grounded in any registry.

¶ 41 We hold that the following provisions of the ordinance are not preempted by

 Section 160D-1207(c) and remain in effect: (1) the restriction of whole-house lodging

 to certain zoning districts, i.e., the entirety of Sec. 18-331.1; (2) the requirement that

 there be at least one off-street parking space per bedroom, whether on-site or off-site

 through shared parking or parking space rental agreements, i.e., the remaining

 portions of Sec. 18-331.5 not held preempted above; (3) the prohibition against

 variances by the board of adjustment in Sec. 18-331.6; (4) requirements that short-

 term operators comply with all applicable laws, disallow events and large gatherings,

 maintain adequate insurance, keep adequate records, ensure refuse is appropriately

 stored and collected, refrain from preparing and serving food, and prohibit cooking in

 individual bedrooms i.e., the entirety of Secs. 18-331.10-.12. and .15-.16;13 (5) the

 requirement that certain information unrelated to registration be posted in the

 rental, i.e., Secs. 18-331.14(a)-(c) and (e); and (6) any provisions of the Ordinance not

 13 Several of these provisions refer to “property owners registering a whole-house
 lodging” or “[r]egistrants,” but it is clear from their context that they are intended to apply
 uniformly to all short-term rentals. Because “it is apparent that the legislative body, had it
 known of the invalidity of the [registration] portion, would have enacted the remainder
 alone,” Jackson v. Guilford Cnty. Bd. of Adjust., 275 N.C. 155, 168, 166 S.E.2d 78, 87 (1969),
 we hold these provisions remain valid despite the use of the words “registering” and
 “registrants.”
 SCHROEDER V. CITY OF WILMINGTON

 2022-NCCOA-210

 Opinion of the Court

 otherwise held preempted above.

 III. CONCLUSION

¶ 42 For the foregoing reasons, we hold that the trial court correctly interpreted

 Sections 160A-424(c) and 160D-1207(c) in concluding that the short-term rental

 registration regime enacted by Wilmington was preempted by those statutes. We

 also hold, however, that portions of the Ordinance, as identified above, are severable

 from the invalid registration provisions and remain operative. We therefore affirm

 the trial court’s judgment in part, reverse the portion of the judgment declaring the

 entirety of the Ordinance invalid, and remand for entry of a judgment consistent with

 our holdings. Plaintiffs’ cross-appeal is dismissed as moot.

 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED; CROSS-

 APPEAL DISMISSED.

 Judges ZACHARY and CARPENTER concur.