IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-210

No. COA21-192

Filed 5 April 2022

New Hanover County, No. 19-CVS-4028

DAVID SCHROEDER and PEGGY SCHROEDER, Plaintiffs,

v.

CITY OF WILMINGTON and CITY OF WILMINGTON BOARD OF ADJUSTMENT, Defendants.

Appeal and cross-appeal from a judgment and stay entered 15 October 2020 by Judge R. Kent Harrell in New Hanover County Superior Court. Heard in the Court of Appeals 17 November 2021.

*Nelson Mullins Riley & Scarborough, LLP, by John E. Branch, III, and Andrew D. Brown, and Institute for Justice, by Ari Bargil and Adam Griffin, for Plaintiffs-Appellees/Cross-Appellants.*

*Poyner Spruill LLP, by N. Cosmo Zinkow and Robert E. Hagemann, and Deputy City Attorney Meredith T. Everhart, for Defendant-Appellant/Cross-Appellee City of Wilmington.*

INMAN, Judge.

¶ 1     The North Carolina Constitution establishes the State as sovereign, and local governments may exercise only those powers that our General Assembly "deem[s] advisable" through legislative enactment. N.C. Const. art. VII, § 1. When a legal question arises regarding the scope of a local government's authority, it is the

judiciary's duty to interpret the enabling law and apply it in accordance with the General Assembly's intent. *Occaneechi Band of Saponi Nation v. N.C. Comm'n of Indian Affairs*, 145 N.C. App. 649, 653, 551 S.E.2d 535, 538 (2001). And when a local government enacts an ordinance asserting powers that exceed those granted by the General Assembly, we are compelled to invalidate the unauthorized action. *King v. Town of Chapel Hill*, 367 N.C. 400, 411, 758 S.E.2d 364, 373 (2014).

¶ 2 David and Peggy Schroeder ("Plaintiffs") dispute the authority of the City of Wilmington ("Wilmington") to enact a zoning ordinance restricting short-term rentals through a registration and lottery process. Plaintiffs presented several state law and constitutional law rationales to the trial court. The trial court dismissed Plaintiffs' constitutional challenges but agreed that the zoning ordinance was entirely invalid based on a statute and its amended recodification precluding local governments from "requir[ing] any owner or manager of rental property . . . to register rental property with the local government." N.C. Gen. Stat. § 160A-424(c) (2017), *recodified as amended at* N.C. Gen. Stat. § 160D-1207(c) (2021).

¶ 3 The trial court stayed its judgment, and both parties appeal. Wilmington challenges the judgment and Plaintiffs challenge the dismissal of their constitutional

claims and the entry of a stay.[1]

After careful review, we affirm the trial court's judgment that the registration and lottery provisions of Wilmington's ordinance are invalid under Section 160D-1207(c) of our General Statutes. But we reverse the portion of the judgment striking provisions of the Wilmington ordinance that are not prohibited by statute and are severable from the invalid provisions. Because our holding renders moot Plaintiffs' constitutional challenges to the ordinance, we do not reach Plaintiffs' cross-appeal.

## I. FACTUAL AND PROCEDURAL HISTORY

The record below and our General Statutes disclose the following:

### A. The General Assembly Restricts Permitting, Permission, and Registration Requirements for Residential Rentals

In 2011, the General Assembly enacted a statute prohibiting cities from penalizing or restraining the rental of residential real property absent "reasonable cause." 2011 N.C. Sess. Laws 1034, 1034, ch. 281. That statute, Section 160A-424(c),[2] prohibited cities from "requir[ing] any owner or manager of rental property to obtain any permit or permission from the city to lease or rent." N.C. Gen. Stat. § 160A-424(c)

---

[1] Plaintiffs moved this Court to dissolve the stay by separate motion, and we denied that motion by order entered 20 April 2021. Because Plaintiffs concede that we have already decided this issue against them and they advance their arguments strictly for preservation purposes, we do not revisit that issue in this opinion.

[2] Our General Statutes are organized by subject matter into chapters, which may be further subdivided into subchapters, articles, parts, or subparts. A "Section" is the text of the law itself, and sections are placed within the chapters and their various subdivisions.

(2011). The statute provided an exception allowing cities to "levy a fee for residential rental property *registration* under subsection (c)" if the rental units in question had a sufficient number of local ordinance violations or were hotspots for criminality. *Id.* § 160A-424(d) (emphasis added). Subsection (d) further allowed cities "that charge[d] registration fees for all residential rental properties as of June 1, 2011" to continue to do so according to a specific fee schedule. *Id.*

¶ 7        As the land development statutes were codified at the time Section 160A-424(c) was originally enacted, municipal land development regulatory powers were found in Article 19, "Planning and Regulation of Development," of Chapter 160A, "Cities and Towns." County land development regulatory powers were located in Article 18, "Planning and Regulation of Development," in Chapter 153A, "Counties." Thus, the statutes authorizing local governments to regulate land uses were codified in two separate chapters, depending on the body politic. Section 160A-424(c), as a statute governing municipalities, was located in Part 5, "Building Inspection," of Article 19 in Chapter 160A. Organizationally, this placed Section 160A-424(c) apart from our municipal zoning laws, which were located in Part 3, "Zoning," of Article 19 in Chapter 160A.

¶ 8        In 2017, the General Assembly added language to Section 160A-424(c) to bar cities from "requir[ing] any owner or manager of rental property to obtain any permit or permission . . . to lease or rent . . . *or to register rental property with the city*." N.C.

Gen. Stat. § 160A-424(c) (2017) (emphasis added). The statute continued the exceptions for properties that repeatedly violated building codes or were sites of substantial criminal activity. *Id.* The amended statute repealed the subsection that allowed the uniform rental registration programs predating June 2011 to continue, ending the authorization of those programs. *Id.* § 160A-424(d).

**B. Wilmington Regulates Short-Term Rentals Through Registration**

¶ 9 Against this statutory backdrop, Wilmington sought to protect its neighborhoods and housing market from the impact of widespread short-term rentals. Wilmington's City Council identified concerns including "undue commercialization and disruption to the primary and overarching purpose of a neighborhood being first and foremost a residential community, where people actually live," and the possibility that "inordinate reductions in the supply of housing available for standard rentals for the citizens of Wilmington could have a destabilizing effect on housing affordability." These concerns led Wilmington to enact a zoning ordinance (the "Ordinance") in January 2019 regulating short-term rentals within city limits in an effort to balance their negative effects against the benefits of a "properly regulated" short-term rental market—including "assisting property owners to keep properties in good repair, which, in turn, stabilizes home ownership, maintains property values, and strengthens the economy of the City."

¶ 10 The Ordinance restricted short-term rentals to specific zoning districts,

required at least 400 feet of separation between short-term rentals, and capped the total percentage of short-term rentals at two percent of residential parcels within Wilmington's 1945 Corporate Limits and two percent of residential parcels outside the same. To implement the separation and cap requirements, the Ordinance required short-term rental operators to register their properties. Initial registrations were to be doled out in conformity with the separation and cap requirements by lottery. Registrations would terminate if not renewed annually, upon transfer of the subject property, or for violations of law, and registrations filed after the initial lottery would be received and processed on a first-come, first-served basis. Existing short-term rental operators who failed to obtain a registration by lottery were required to cease short-term rentals by the end of a one-year amortization period. Other sections of the Ordinance imposed health, safety, and similar requirements, such as requiring short-term rental operators to conspicuously post the dates for garbage collection and the non-emergency telephone number for the Wilmington Police Department.

## C. Plaintiffs' Challenge

¶ 11        Plaintiffs own a townhome in the Lions Gate community of Wilmington, which they used as a short-term rental without any reported problems prior to the enactment of the Ordinance. After the Ordinance was passed, Plaintiffs registered their property but lost in the initial lottery, as another property within 400 feet of

their townhouse drew a lower lottery number. Plaintiffs appealed to the Wilmington Board of Adjustment, which upheld Wilmington's denial of registration.

¶ 12    With no other administrative avenues available to them, Plaintiffs filed a declaratory judgment action in October 2019 to challenge the validity of the Ordinance, alleging it violated Section 160A-424(c)'s prohibition against ordinances "that would require any owner or manager of rental property to obtain any permit or permission from the city to lease or rent residential real property or to register rental property with the city."[3]

**D. The General Assembly Reorganizes and Recodifies Local Land Use Regulatory Statutes**

¶ 13    In July 2019, shortly before Plaintiffs filed suit, the General Assembly amended and recodified statutes concerning local government regulation of short-term rentals, including Section 160A-424(c). On 1 July 2019, the General Assembly enacted Session Law 2019-73 to explicitly place vacation rentals under the ambit of Section 160A-424. 2019 N.C. Sess. Laws 300, 300, ch. 73, § 1. Ten days later, the General Assembly amended and recodified Section 160A-424 as part of a session law

---

[3] Plaintiffs also brought several facial and as-applied challenges to the Ordinance under the North Carolina Constitution and have cross-appealed the later dismissal of those claims to this Court. Because we hold that the allegedly unconstitutional portions of the Ordinance are preempted on statutory grounds, we dismiss as moot Plaintiffs' cross-appeal arguing the unconstitutionality of the Ordinance. *Chavez v. McFadden*, 374 N.C. 458, 467, 843 S.E.2d 139, 147 (2020).

captioned, "An Act to Clarify, Consolidate, and Reorganize the Land-Use Regulatory Laws of the State." 2019 N.C. Sess. Laws 424, 424, ch. 111 (hereinafter "the Act"). Part II of the Act—which contains the recodification of Section 160A-424—is titled "Provisions to Reorganize, Consolidate, Modernize, and Clarify Statutes Regarding Local Planning and Development Regulation." *Id.* at 439, ch. 111.

¶ 14        Part II of the Act at issue in this case provides:

> . . . The intent of the General Assembly by enactment of Part II of this act is to collect and organize existing statutes regarding local planning and development into a single Chapter of the General Statues and to consolidate the statutes affecting cities and counties.
>
> . . . The intent of the General Assembly by enactment of Part II of this act is to neither eliminate, diminish, enlarge, nor expand the authority of local governments to exact land, construction, or money as part of the development approval process or otherwise materially alter the scope of local authority to regulate development . . . .

*Id.* at 439, ch. 111, §§ 2.1.(e)–(f). Part II relocated the previously scattered patchwork of planning and development statutes into a single new chapter, Chapter 160D. *Id.* at 439, ch. 111, § 2.4. The Act also expressly provides that "Part II of this act clarifies and restates the intent of existing law and applies to ordinances adopted before, on, and after the effective date." *Id.* at 547, ch. 111, § 3.2. As an express clarifying amendment of declared retroactive effect, the Act's recodification retroactively applied to Wilmington's Ordinance.

¶ 15        The new Chapter 160D is organized into 14 Articles. Chapter 160D maintains the structural separation between zoning and building code inspection that existed in the previous codification of our land regulation statutes. Zoning is now found in Article 7, "Zoning Regulation," N.C. Gen. Stat. §§ 160D-701, *et seq.*; building code enforcement in Article 11, "Building Code Enforcement," *id.* §§ 160D-1101, *et seq.*; and minimum housing standards in Article 12, "Minimum Housing Codes." *Id.* §§ 160D-1201, *et seq.* The Act recodified Section 160A-424 as Section 160D-1207, placing it among the minimum housing standard statutes in Article 12.[4] *Id.* §§ 160D-1201, *et seq.*

¶ 16        The General Assembly also modified the language regarding the prohibitions against permitting, permissions, and registrations applicable to residential rentals. The new statute, with additions marked in bold and deletions struck through, now reads:

> In no event may a ~~city~~ **local government** do any of the following: (i) adopt or enforce any ordinance that would require any owner or manager of rental property to obtain any permit or permission **under Article 11 or Article 12 of this Chapter** from the ~~city~~ **local government** to lease or rent residential real property or to register rental property with the ~~city~~ **local government.**

---

[4] The sections in Chapter 160D are generally numbered sequentially according to their placement in the Chapter. The amended statutory language at issue here is found in the seventh section of Article 12 in Chapter 160D, hence Section 160D-1207.

*Compare* N.C. Gen. Stat. § 160A-424(c) (2017), *with* N.C. Gen. Stat. § 160D-1207(c) (2021).

**E. The Trial Court Concludes the Ordinance Is Preempted by Statute**

Wilmington moved to dismiss Plaintiffs' complaint. The trial court dismissed Plaintiffs' constitutional claims by order entered 11 March 2020. Wilmington then filed its answer and moved for summary judgment in its favor, while Plaintiffs moved to amend their complaint to explicitly address, among other things, the changes to and recodification of Section 160A-424(c) as Section 160D-1207(c). The trial court denied this motion by order entered on 3 September 2020, and on 15 September 2020, the trial court granted summary judgment to Plaintiffs, declaring the entirety of the Ordinance void based on the conclusion that Section 160A-424(c) and its revised codification at Section 160D-1207(c) unambiguously prohibited Wilmington's short-term rental registration scheme.

Wilmington moved for a stay of the trial court's judgment shortly after entry. The trial court granted that motion as to all parties except Plaintiffs who, by statute, enjoyed a stay of the Ordinance's enforcement against them during litigation. The trial court's ruling on summary judgment and the entry of the stay were then consolidated into a final judgment entered 15 October 2020, and both parties filed timely notices of appeal.

## II.  ANALYSIS

¶ 19      This appeal requires us to resolve three competing interpretations and applications of Sections 160A-424(c) and its successor statute 160D-1207(c): by the trial court, by Plaintiffs, and by Wilmington.  Section 160A-424(c) prohibited Wilmington from enacting an ordinance that required a short-term rental operator "to obtain any permit or permission from the city to lease or rent . . . or to register rental property with the city."  N.C. Gen. Stat. § 160A-424(c).  When it recodified the statute as Section 160D-1207(c), the legislature added nine words that have spawned the differing interpretations before us, prohibiting Wilmington from requiring short-term rental operators "to obtain any permit or permission **under Article 11 or Article 12 of this Chapter** . . . to lease or rent . . . or to register rental property."  N.C. Gen. Stat. § 160D-1207 (emphasis added).[5]

¶ 20      The trial court concluded that Section 160D-1207(c) prohibits Wilmington from requiring: (1) permits and permissions to rent under Articles 11 and 12; and (2) all registrations of rental property. Plaintiffs construe the new language to prohibit (1) all permits to lease or rent; (2) permissions to rent under Articles 11 and 12; and (3) all registrations of rental property as a condition to rent.  Wilmington advocates a third reading, contending the added cross-reference to Articles 11 and 12 modifies the

---

[5] Section 160D-1207 includes several specific exceptions that are not at issue in this case, so we do not address them.

scope of "permits," "permissions," *and* registrations, so that local governments are authorized to use their zoning powers—found in Article 7—to implement registration schemes on short-term rentals.

¶ 21        After reviewing the language of the statutes, we hold that Wilmington's registration requirements for rentals, and those provisions of the ordinance inseparable from them, are prohibited by state statute and therefore invalid, and we affirm the trial court's judgment in this respect. However, because several of the Ordinance's provisions are severable from the invalid registration provisions, we reverse the trial court's judgment in part and remand for entry of a judgment that invalidates the registration requirement and those provisions insevarable from it, but leaves the severable sections, described below, intact.

## A. Standard of Review

¶ 22        We review the trial court's entry of summary judgment *de novo*. *JVC Enters., LLC v. City of Concord*, 376 N.C. 782, 2021-NCSC-14, ¶8. Summary judgment is proper when there are no genuine issues of material fact and judgment in favor of a party is appropriate as a matter of law. *Id*. The same *de novo* standard applies to questions of statutory interpretation. *Id*.

**B. Section 160A-424(c) Unambiguously Prohibited Wilmington's Registration Ordinance**

When the Ordinance was first enacted, Section 160A-424(c) generally precluded cities from "requir[ing] any owner or manager of rental property . . . to obtain any permit or permission . . . to lease or rent residential real property or to register rental property with the city." N.C. Gen. Stat. § 160A-424(c) (2017). Thus, the statute prohibited two categories of regulation: (1) permits or permissions to lease or rent; and (2) registrations of rental property. The statutory language is in no way ambiguous, so it must be afforded its plain effect without reference to canons of statutory interpretation. *See, e.g., Jeffries v. Cnty. of Harnett*, 259 N.C. App. 473, 488, 817 S.E.2d 36, 48 (2018) ("[W]hen the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give it its plain and definite meaning." (citation and quotation marks omitted)). The Ordinance is prohibited by the statute's straightforward language to the extent it requires Plaintiffs "to register rental property with the city." N.C. Gen. Stat. § 160A-424(c).

Wilmington asserts that Section 160A-424(c) was only intended to limit registration requirements in the context of building code inspections—not zoning—by pointing out that it was included in a part of our General Statutes that, per its title, related to municipal building inspections. But, because Section 160A-424(c) is

unambiguous, our analysis begins and ends with the plain meaning of the text, and we need not consult its placement in a building inspection statute to discern the legislature's intent. *Appeal of Forsyth County*, 285 N.C. 64, 71, 203 S.E.2d 51, 55 (1974) ("The law is clear that captions of a statute cannot control when the text is clear." (citation omitted)); *First Bank v. S&R Grandview, L.L.C.*, 232 N.C. App. 544, 551, 755 S.E.2d 393, 397 (2014) (noting that "the placement of a statute within an act is less probative of legislative intent than the plain language of the statute itself" and holding the placement of a plain and unambiguous statute had no bearing on the interpretation of its plain language). *But see Ray v. N.C. Dept. of Transp.*, 366 N.C. 1, 8, 727 S.E.2d 675, 681 (2012) (observing that "even when the language of a statute is plain, the title of an act should be considered in ascertaining the intent of the legislature" where there was no question as to the plain meaning of a statutory amendment but only whether the amendment was intended to apply retroactively or prospectively) (citation and quotation marks omitted)).

## C. Recodification as Section 160D-1207(c) Did Not Alter the Restriction Against Registrations

Our review of Section 160D-1207(c), in context with the rest of Chapter 160D and together with Section 160A-424(c)'s prior unambiguous language, leads us to hold that the registration provisions of the Ordinance are invalid. We hold that Section 160D-1207(c) continues to impose a disjunctive list of two prohibitions, restricting

local governments from:

> requir[ing] any owner or manager of rental property [1] to obtain any permit or permission under Article 11 or Article 12 of this Chapter from the local government to lease or rent residential real property or [2] to register rental property with the local government. . . .

N.C. Gen. Stat. § 160D-1207(c). The Ordinance's registration provisions thus remain preempted by statute.

¶ 26 This reading of Section 160D-1207(c) avoids any violence to the statutory language and structure. It also continues to treat "permit or permission . . . to lease or rent" as a single category of prohibited regulatory action separate from "registrations"—just as was demanded by the unambiguous language of its predecessor statute, Section 160A-424(c).

¶ 27 Treating "permit or permission" of a like kind and as a single categorical phrase also accords with the construction of Chapter 160D itself. Article 11's statutes explicitly refer to "permits" and other approval mechanisms. Except for the prohibition against permits at issue here, Article 12's statutes do not expressly refer to "permits," but they do contemplate other forms of governmental approvals, *i.e.,* permissions. *Compare* N.C. Gen. Stat. §§ 160D-1101, *et seq.* (providing for building code enforcement powers through the issuance of building permits and other forms of written approvals for work), *with* N.C. Gen. Stat. §§ 160D-1201, *et seq.* (allowing for adoption and enforcement of minimum housing code ordinances without specifically

referencing permitting).[6]   Thus, applying the statutory cross-reference to both "permit or permission" and treating them together results in a general prohibition against requiring government approval to lease or rent, however required under Articles 11 or 12, that aligns with the structure of those Articles. *See, e.g., Elec. Supply Co. of Durham, Inc. v. Swain Elec. Co.,* 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991) ("[W]e are guided by the structure of the statute and certain canons of statutory construction." (citations omitted)).

We acknowledge that this reading appears, in some sense, to conflict with the provisions of Chapter 160D's enabling session law that express an intention to clarify, rather than change, the law.  But every interpretation before this Court results in some substantive alteration, as each imposes some restriction where the prior unambiguous language of Section 160A-424(c) contained none.[7]  In this circumstance, we must attempt to construe the provisions of Chapter 160D's enabling session law together, and "harmonize such statutes, if possible, and give effect to each." *Town of*

---

[6] For example, Section 160D-1112 in Article 11 provides that post-permit changes to construction are only allowed if they "are clearly permissible under the State Building Code" or are made pursuant to "specific written approval of the proposed changes . . . [by] the inspection department."  N.C. Gen. Stat. § 160D-1112 (2021).  Article 12, meanwhile, allows a local administrative tribunal to close dwellings unfit for human habitation by order—rather than permit—until repairs are completed and habitation may resume.  N.C. Gen. Stat. § 160D-1203(3)(a) (2021).

[7] Ironically, the "clarifying" changes in Section 160D-1207 have now rendered the statute ambiguous.  *See Winkler v. N.C. State Bd. of Plumbing, Heating & Fire Sprinkler Contractors*, 374 N.C. 726, 730, 843 S.E.2d 206, 211 (2020) (holding a statute was ambiguous where "the provision at issue is equally *unsusceptible* of each proposed interpretation").

*Blowing Rock v. Gregorie*, 243 N.C. 364, 371, 90 S.E.2d 898, 904 (1956).

¶ 29        Our reading of Section 160D-1207(c) seeks to harmonize the clarifying intent of the legislature with the imposition of a new limitation on local government authority to the extent possible. It aligns with and continues the clear original legislative intent, previously expressed in Section 160A-424(c), to provide two disjunctive restrictions: (1) prohibiting permits and permissions to lease or rent (now clarified as permits or permissions pursuant to Articles 11 or 12), and (2) prohibiting registrations of rental properties. In other words, Section 160A-424(c) unambiguously restricted permits or permissions to the same and equal extent, and our reading of Section 160D-1207(c) continues to treat them identically. Similarly, Section 160A-424(c) treated the restriction against permits and permissions separately from the prohibition against registrations, and our interpretation of Section 160D-1207(c) maintains this division, as we do not apply the statutory cross-reference to Articles 11 and 12 inserted into the clause restricting permits and permissions as applying to registrations. As discussed below, neither interpretation of Section 160D-1207(c) suggested by the parties allows for this same symmetry when compared to the original, unambiguous language contained in Section 160A-424(c).

¶ 30        In sum, we hold that the General Assembly enacted Section 160D-1207(c) to clarify that the restriction against permits or permissions to lease or rent originally found in Section 160A-424(c) applied only to the government approvals now found in

Articles 11 and 12. The language added in Section 160D-1207(c) does not suggest that the legislature intended to modify the structure of the previous unambiguous statute precluding registrations generally, nor does it suggest treating "permission[s] . . . to lease or rent" as a separate category of prohibition from "permit[s] . . . to lease or rent." We agree with the trial court's interpretation of Section 160D-1207(c) as prohibiting local governments from requiring a short-term rental owner to obtain a permit to rent under Articles 11 or 12, a permission to rent under the same Articles, or to register the property as a rental with the government.[8] The provisions of Wilmington's Ordinance requiring such a registration—as well as any provisions that are inseverable from that initial registration requirement—are preempted by Section 160D-1207(c) and its unambiguous predecessor Section 160A-424(c).[9]

---

[8] We do not interpret Sections 160A-424(c) or 160D-1207(c) as exempting rental properties from all zoning or permitting requirements; as Plaintiffs conceded at oral argument, even their reading would not preclude Wilmington from zoning or requiring Plaintiffs to obtain a building permit to construct an addition to their property. Our reading does not prohibit these actions either and only limits "permit[s] . . . *under Article 11 or Article 12 . . . to lease or rent.*" N.C. Gen. Stat. § 160D-1207(c) (emphasis added).

[9] Wilmington asserts that our interpretation would allow it to replace "register" with "permit" in the Ordinance and reenact it under Article 7 without violating Section 160D-1207(c). But such a hypothetical ordinance is not before us today and would be open to legal challenges asserting that the statute's language should be applied to reach any "permit" that is, in all practical effect, a registration otherwise barred by the statute. *Cf. Mazda Motors of America, Inc. v. Southwestern Motors, Inc.*, 296 N.C. 357, 361, 250 S.E.2d 250, 253 (1979) (" '[W]here a literal interpretation of the language of a statute will lead to absurd results, or contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and

**D. The Parties' Preferred Interpretations Fail**

¶ 31 In adopting the trial court's interpretation of Section 160D-1207(c), we reject the competing interpretations proposed by the parties.

¶ 32 Plaintiffs' proposed interpretation of the statute would rework the language and punctuation of the statute in the following manner, reflected in bold, to provide that local governments are prohibited from:

> requir[ing] any owner or manager of rental property**[:] [1]** to obtain any permit **[from the local government to lease or rent residential real property;]** or [**2**] **[to obtain]** permission under Article 11 or Article 12 of this Chapter from the local government to lease or rent residential real property**[;]** or **[3]** to register rental property with the local government **[to lease or rent residential real property]**. . . .

N.C. Gen. Stat. § 160D-1207(c).

¶ 33 Plaintiffs' proffered interpretation—which they contend is the only unambiguous reading—requires a substantial revision of the statutory language; truly unambiguous statutes require no modification to be given their plain effect. *See In re Banks*, 295 N.C. 236, 239, 244 S.E.2d 386, 388-89 (1978) ("When the language

---

purpose of the law shall control and the strict letter thereof shall be disregarded.' " (quoting *State v. Barksdale*, 181 N.C. 621, 625 107 S.E. 505, 507 (1921))). Because Wilmington's hypothetical ordinance is not before us, we decline to resolve whether such an ordinance would be preempted by Section 160D-1207(c). *See Chavez*, 374 N.C. at 467, 843 S.E.2d at 147 (noting our appellate courts do not " 'determine matters purely speculative, enter anticipatory judgments, declare social status, deal with theoretical problems, give advisory opinions, answer moot questions, adjudicate academic matters, provide for contingencies which may hereafter arise, or give abstract opinions' " (citation omitted)).

of a statute is clear and unambiguous, . . . the courts must give the statute its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein."); *Lunsford v. Mills*, 367 N.C. 618, 623, 766 S.E.2d 297, 301 (2014) (noting that, in applying an unambiguous statute, "it is our duty to give effect to the words actually used in a statute and not to delete words used or to insert words not used"). And Plaintiffs offer no rule of grammar or construction that would allow us to transpose the modifier "to lease or rent" to the later restriction on registrations. Plaintiffs acknowledge that the prohibition on registration "follows in a completely separate clause" from "permit[s] or permission[s] . . . to lease or rent."

¶ 34    Plaintiffs argue that "it is impossible to conceive of a permitting scheme that did not also in some sense require registration. . . . [A] bar on registrations would sweep up practically any permitting scheme." But if this is true, Plaintiffs' reading of the statute would render its provisions redundant: the legislature would not need to prohibit permits to lease or rent and registrations to lease or rent separately if a ban on the latter encompassed the former. *See State v. Morgan*, 372 N.C. 609, 614, 831 S.E.2d 254, 258 (2019) ("We are further guided in our decision by the canon of statutory construction that a statute may not be interpreted in a manner which would

render any of its words superfluous." (citation and quotation marks omitted)).[10] And, because this interpretation presumes the legislature intended to create *three* categories of restrictions—(1) permits, (2) permissions under Articles 11 or 12, and (3) registrations—when the unambiguous language of Section 160A-424(c) only imposed *two*—(1) permits or permissions, and (2) registrations—we decline to adopt it as the "clarified" meaning of Section 160A-424(c).

¶ 35      We also disagree with Wilmington's argument that the statutory cross-references added to Section 160D-1207(c) limit the general prohibition against registrations originally found in Section 160A-424(c).  Under that reading, Section 160D-1207(c) prohibits local governments from:

> requir[ing] . . . any permit or permission under Article 11 or Article 12 . . . from the local government[:] [1] to lease or rent residential real property or[;] [2] to register rental property with the local government.

---

[10] Our reading of the statute does not result in this redundancy.  By prohibiting "permit[s] or permission[s] under Article 11 or Article 12 of this Chapter . . . to lease or rent" together, the General Assembly identified what permits it intended to curtail in Section 160D-1207(c).  The registration prohibition is then read in context not to encompass all permits, but instead to prohibit any ordinance that requires the landowner to register as a residential rental with the government under any article and however imposed. *See City of Asheville v. Frost*, 370 N.C. 590, 592, 811 S.E.2d 560, 562 (2018) ("In interpreting a statute, a court must consider the statute as a whole and determine its meaning by reading it in its proper context and giving its words their ordinary meaning."). *Cf. Jeffries*, 259 N.C. App. at 493, 817 S.E.2d at 50 ("The interpretative canon of *noscitur a sociis* instructs that 'associated words explain and limit each other' and an ambiguous or vague term 'may be made clear and specific by considering the company in which it is found, and the meaning of the terms which are associated with it." (citation omitted)).

Thus, Wilmington asserts that Sections 160A-424(c) and 160D-1207(c) prohibit, among other things, "permission[s]. . . to register" under Articles 11 and 12. But Wilmington's able counsel conceded in oral argument that no statute in Article 11 or 12—or anywhere else in the General Statutes—references a "permission to register" scheme.

¶ 36    Counsel for Wilmington offered a singular example of a "permission to register" regime, contending a city could restrict short-term rentals to certain zoning districts and then require short-term rental operators to register.  In such a circumstance, only those in the proper zoning district would have "permission to register" as a short-term rental.[11]  But this example—the only one put forward by Wilmington—is self-defeating: if "permission to register" only arises through the exercise of a local government's Article 7 zoning powers, there would be no need for the General Assembly to prohibit "permission to register" under Articles 11 and 12.  We will not read the statute as prohibiting something that does not appear to exist. Such a reading runs counter to the mandate that "a statute must be construed, if possible, to give meaning and effect to all of its provisions." *HCA Crossroads Residential Ctrs. v. N.C. Dept. of Human Res.*, 327 N.C. 573, 578, 398 S.E.2d 466, 470 (1990).  *See also*

---

[11] Even this example does not align with the statute when its words are given their common and ordinary meaning, as a zoning ordinance allowing for certain uses in a district would not put any positive burden on the landowner "to *obtain* . . . permission" to engage in those uses.

*Estate of Jacobs v. State*, 242 N.C. App. 396, 402, 775 S.E.2d 873, 877 (2015) (declining to adopt an interpretation rendering a statute's provisions "superfluous or nonsensical").

**E. The Trial Court Erred in Invalidating the Entire Ordinance**

¶ 37        Though we hold that the trial court correctly concluded that the Ordinance is invalid to the extent that it is preempted by Section 160D-1207(c), we disagree that the entirety of the Ordinance fails as a result.

¶ 38        Section 14 of the Ordinance states, "if any . . . portion of this ordinance is for any reason held invalid or unconstitutional by any court of competent jurisdiction, such portion shall be deemed severable and such holding shall not affect the validity of the remaining portions thereof." We will give effect to this clause to preserve any provisions that are "not so interrelated or mutually dependent" on the invalid registration requirements that their enforcement "could not be done without reference to the offending part." *Fulton Corp. v. Faulkner*, 345 N.C. 419, 422, 481 S.E.2d 8, 9 (1997). Non-offending sections of the Ordinance that are "complete in [themselves] and capable of enforcement" will remain in effect. *Id.* Stated differently, "[w]e will sever a provision of an otherwise valid ordinance when the enacting body would have passed the ordinance absent the offending portion." *King*, 367 N.C. at 410, 758 S.E.2d at 372 (citation omitted).

¶ 39        Several provisions of the Ordinance are so intertwined with the invalid

registration requirement that they are likewise preempted by Section 160D-1207(c), namely: (1) the cap and distance requirements and their predicate registration provisions, *i.e.,* the entirety of Secs. 18-331.2 and 18-331.4;[12] (2) the proof of shared parking or parking space rental and the submission of all shared parking agreements to the city attorney for approval prior to registration, as found in Sec. 18-331.5; (3) the registration termination provisions, *i.e*, the entirety of Secs. 18-331.8-.9 and .13; (4) the requirement that a registration number be posted in a short-term rental, as found in Sec. 18-331.14(d); (5) Sec. 18-331.7's limited application to "registered" uses only; and (6) the amortization of short-term rentals without a registration, *i.e.*, the entirety of Sec. 18-331.17.

¶ 40       The remainder of the Ordinance does not require registration to be enforceable and gives effect to Wilmington's intent in enacting the Ordinance.  For example, the requirement that each short-term rental operator provide one off-street parking space per bedroom does not require registration to be effective or enforceable; a customer may rent a short-term rental assuming compliance with this provision and inform Wilmington of a violation should parking prove inadequate.  Similarly, the prohibition against cooking in bedrooms or the requirement that operators

---

[12] To avoid possible confusion, our citations refer to Section 18-331 of Chapter 18, Article 6 of Wilmington's Land Development Code, as amended by the Ordinance and set forth in the record on appeal.

conspicuously post the non-emergency telephone number for the Wilmington Police Department are not grounded in any registry.

¶ 41    We hold that the following provisions of the ordinance are *not* preempted by Section 160D-1207(c) and remain in effect: (1) the restriction of whole-house lodging to certain zoning districts, *i.e.,* the entirety of Sec. 18-331.1; (2) the requirement that there be at least one off-street parking space per bedroom, whether on-site or off-site through shared parking or parking space rental agreements, *i.e.*, the remaining portions of Sec. 18-331.5 not held preempted above; (3) the prohibition against variances by the board of adjustment in Sec. 18-331.6; (4) requirements that short-term operators comply with all applicable laws, disallow events and large gatherings, maintain adequate insurance, keep adequate records, ensure refuse is appropriately stored and collected, refrain from preparing and serving food, and prohibit cooking in individual bedrooms *i.e.*, the entirety of Secs. 18-331.10-.12. and .15-.16;[13] (5) the requirement that certain information unrelated to registration be posted in the rental, *i.e.*, Secs. 18-331.14(a)-(c) and (e); and (6) any provisions of the Ordinance not

---

[13] Several of these provisions refer to "property owners registering a whole-house lodging" or "[r]egistrants," but it is clear from their context that they are intended to apply uniformly to all short-term rentals. Because "it is apparent that the legislative body, had it known of the invalidity of the [registration] portion, would have enacted the remainder alone," *Jackson v. Guilford Cnty. Bd. of Adjust.*, 275 N.C. 155, 168, 166 S.E.2d 78, 87 (1969), we hold these provisions remain valid despite the use of the words "registering" and "registrants."

otherwise held preempted above.

### III.   <u>CONCLUSION</u>

For the foregoing reasons, we hold that the trial court correctly interpreted Sections 160A-424(c) and 160D-1207(c) in concluding that the short-term rental registration regime enacted by Wilmington was preempted by those statutes. We also hold, however, that portions of the Ordinance, as identified above, are severable from the invalid registration provisions and remain operative. We therefore affirm the trial court's judgment in part, reverse the portion of the judgment declaring the entirety of the Ordinance invalid, and remand for entry of a judgment consistent with our holdings. Plaintiffs' cross-appeal is dismissed as moot.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED; CROSS-APPEAL DISMISSED.

Judges ZACHARY and CARPENTER concur.